Opinion of the Court.
THIS was an action of detinue, brought, in the court below by the heirs of Smithers, to recover from Baylor a negro girl named Jane.
A trial was had on the general issue, and a verdict found for Baylor ; but on the motion of the heirs, a new trial was awarded by the court, on the ground of John Cockrell, who was introduced as a witness by the heirs, having been rejected on the trial as an incompetent witness.
. A second trial was had at a subsequent term, and a Verdict and judgment recovered by the heirs. Instructions were asked of the court to the jury, by Baylor, during the progress of the trial, but were refused by the court; and after the finding of the jury against him, a motion was also made by Baylor for a new trial ; but his motion was overruled. Exceptions were taken to the decision of the court, awarding a new trial at the instance of the heirs, as well as in its decision refusing to instruct the jury on the last trial, and in overruling the application of Baylor, for a new trial, after the verdict was found against him. An exception was also taken by Baylor on the last trial, to the court’s refusal to exclude, as incompetent, the evidence of two witnesses introduced by the heirs.
From the judgment rendered in favor of the heirs, on the last verdict, Baylor has appealed to this court.
The assignment of errors questions the decision of the court in setting aside the first verdict, which was found for Baylor, as well as each decision subsequently given to the prejudice of Baylor.
We shall first enquire into the correctness of the decision awarding the new trial at the instance of the heirs.
It appears that Baylor purchased the negro girl in contest, at a sale at three months’ credit, made by the sheriff of Bourbon county, under an execution which issued against the estate of a certain John Shir *107 ley on a judgment in favor of other persons, and that Cockrell, who was rejected as an incompetent witness on the first trial, became the security of Baylor in a bond given at the time of the purchase for the price, under the law directing property taken in execution to be sold at three months' credit. The amount of this bond appears not to have been paid by Baylor, and after the commencement of this suit against him, he exhibited a bill in equity against the creditors of Shirley, in whose favor the negro was sold, enjoining the collection of the money.
If, after the event which a witness is called to prove, he becomes interested by his own act, without the interference of the party by whom he is called, such subsequent interest will not render him incompetent,
This injunction was not dissolved at the trial of this cause in the circuit court; but the heirs of Smithers, for the purpose of showing their right to the girl, asserted, not under Shirley, but through their ancestor, who departed this life previous to the purchase of Baylor, introduced Cockrell as a witness, and the court, supposing that as the security of Baylor, Cockrell was interested in the contest, excluded his evidence from the jury at the instance of Baylor. But after the jury found a verdict for Baylor, and further consideration, the court changed its opinion as to the competency of Cockrell as a witness, and on the ground of his evidence having been excluded from the jury, awarded a new trial.
1. Whether, therefore, under the circumstances thus detailed, Cockrell was, or was not a competent witness for the heirs, is the only question to be decided in revising the decision of the court in awarding the new trial.
It is not pretended that Cockrell is anywise interested in the girl ; but his interest is attempted to be made out under the obligation in which he became bound as security of Baylor for the purchase money. Any objection to the evidence of Cockrell, predicated on his being interested under that obligation, certainly comes with very ill grace from Baylor, and considered exclusively in reference to him, should not, we apprehend, exclude the evidence. For the right which is asserted by the heirs of Smithers to the girl, must not only have originated prior to the execution of the obligation, but the obligation was executed by the witness, Cockrell, through the procurement of Baylor, and without the participation of the heirs; and it is said, that if after the event which the witness is called *108 to prove, he becomes interested by his own act, without the interference of the party by whom he is called, such subsequent interest will not render him incompetent. Peak’s Evi. 105. And the reason in favor of the competency of a witness is still stronger, where, as in this case, the interest (if any the witness has,) not only originates subsequent to the event, which he is called to prove, but that interest is occasioned by the procurement of the party against whom the evidence is offered.
And this rule applies with additional force, where the witness became subsequently interested, through the procurement of the party objecting to his competency.
But it may be contended, that a recovery by the heirs of Smithers in this case, against Baylor, will be conclusive against the liability of the girl to the execution under which she was sold by the sheriff, and that if she was not liable to the execution, Baylor and his securities will be discharged from the obligation given for the purchase money, and as Baylor has exhibited his bill in equity against the creditors, in whose favor the girl was sold, it may be urged that a judgment in this case, will not only exclude Baylor as to the right of the girl, but, likewise, constitute evidence of that right in the chancery suit against the creditors ; and hence it may be thought, that on account of the interest of Cockrell, in opposition to the claim of the creditors, and to guard the creditors against the influence of that interest on his testimony, he should be excluded as incompetent to prove the right asserted by the heirs.
It is undeniable, that if the girl of right belonged to the heirs, she was not liable to the execution against Shirley ; but it is a question of more doubt, (and one we have not thought necessary now to decide,) whether, admitting that she was not subject to the execution, Baylor and Cockrell would not nevertheless, he compelled to pay the amount of the obligation executed by them for the price. Be that, however, as it may, we apprehend, that in this contest, Cockrell was a competent witness. Were it conceded, that Baylor and Cockrell ought to be released from the payment of the price of the girl, if she were not liable to the execution under which she was purchased by Baylor, it would follow that Cockrell in a contest with the creditors of Shirley, in whose favor the girl was sold, would be an incompetent witness for Baylor, to prove the girl not liable to the execution. But this is not a *109 contest between Baylor and the creditors ; it is a suit brought against Baylor, by the heirs of Smithers, and those heirs should not be deprived of the evidence of Cockrell to which they were entitled before he became, in any manner, interested, by the act of Baylor in procuring him to execute the obligation of the creditors of Shirley.
A judgment procured against a purchaser on the evidence of a witness interested against the vender, is inadmissible as evidence in a suit against the vender for recourse:
But it may be said that the exhibition of Baylor's bill in chancery, against the creditors of Shirley, is notice to them of the pendency of this suit against him; and it may be contended, that after such notice, a judgment against Baylor will be evidence in the chancery suit against the creditors.
That a judgment against a purchaser at the suit of a stranger, will, after notice to the vender, be evidence against him, will not, as a general principle, be controverted. But, as all other general rules, it has its exceptions; and it is denied, that a judgment procured against the purchaser, on the evidence of a witness who is interested against the vender, would be admissible against him. After such a judgment, to obtain recourse, the purchaser should establish the right of the successful claimant by other evidence than the judgment ; and if Baylor be entitled to relief, against his obligation, on the ground of the right of the girl being in the heirs of Smithers, it is to that description of evidence he must resort. He should not by his own act deprive the heirs of Smithers of a witness, to whose evidence they had a previous right ; and he should not, after creating an interest against the creditors of Shirley, be permitted to use as evidence against them, any judgment which may go against him on the evidence of a witness made interested by his own act and procurement.
It results that the court erred in excluding the evidence of Cockrell from the jury on the first trial, and consequently decided correctly, after a verdict was found against the heirs, in awarding a new trial.
With respect to one of the witnesses, whose evidence was objected to by Baylor, on the last trial, it need only be remarked, that the objection was taken on the same ground as that urged against Cockrell, and for the reasons advanced in favor of the competency of Cockrell, the objection was properly overruled by the court.
The defendant on whose property an execution was levied and the property sold, is a competent witness to prove the extent of his title to the property, in a controversy arising between the purchaser at such sale, and a person claiming the same property by title adverse to that of the defendant.
3. The other witness objected to by Baylor, on the last trial, was John Shirley, against whose estate the execution issued, under which the purchase of the girl was made by Baylor. The object of introducing Shirley, was, to prove the manner he held the girl under the ancestor of the heirs of Smithers, at the time of sale ; and we are unable to perceive any legal objection to his competency as a witness for that purpose. He cannot be said to have such an interest in support of the right of the heirs, as to render him incompetent on that ground ; for by proving the property of the girl to be in the heirs, he would subject himself again to the amount for which she had been sold, without confering on himself any right to be restored to her possession. An attempt was made on the trial to prove a fraudulent and collusive combination, between the ancestor of the heirs and Shirley, to defraud the creditors of Shirley, and it may be contended, that Shirley was an incompetent witness to disprove the alleged fraud, and on that ground ought to have been excluded. But it may be replied, that the supposed argument assumes an objection, which goes properly to the credit and not to the competency of Shirley. A particeps criminis has always been held a competent witness, and by the supreme court of the state of New York, a defendant to an execution was held competent to disprove fraud, alleged to have been committed by him in the sale and conveyance of property taken and sold, to satisfy an execution which issued against his estate, 6 John. Rep. 135.
The contest in that case was between the vendee of the witness, and the purchaser under the execution, and before the witness was introduced, his interest was released by his vendee; whereas, in the present case, there was no such a release to the witness, Shirley ; but we have seen that Shirley can have no interest in the event of the suit, and the case cited shews, that if he has no interest he is competent to prove there was no fraud in the transaction between him and the ancestor of the heirs.
4. On the last trial before the jury, it was proved by the heirs, that when their ancestor came to Kentucky he loaned the negro girl to the wife of Shirley, as a nurse ; and after remaining with Shirley about two years, an agreement was made between Shirley and *111 the ancestor of the heirs, about the sale and purchase of the girl. By the agreement Shirley was to pay $400 for the girl, part of which was paid down, and the residue to be paid at some future period; but it was agreed, that if the residue, so thereafter to be paid, should in fact not be paid, the girl was to be returned to the ancestor, and the amount received by him refunded to Shirley. After this evidence was gone through, and it being, among other things, further proved, that Shirley held the possession of the girl from the time of the agreement until she was taken in execution by the sheriff, under the fieri facias by which she was sold to Baylor, without his having paid the residue of the price to the ancestor or his representatives, and without any demand being made there, for, or an offer to refund to Shirley the amount which he had paid, the court, on the motion of Baylor, was asked to instruct the jury, “that even if they should he satisfied, from the evidence, that the sale of the slave in question was made by Smithers to Shirley, subject to the condition, that the sale should be void in the event of the failure of Shirley to pay the balance of the consideration money, still the possession of the slave by Shirley, claiming her as his own, and exercising all the acts and powers of absolute ownership, with the knowledge, privity and consent of Smithers, gave him credit with the world, and that such condition, of consequence, was fraudulent and bad as a condition and purchase, and could not be enforced against Baylor, and that the law was with him.” But the motion was overruled by the court, and the instructions refused.
Where there is an absolute bill of sale, and the property sold remains with the seller, the transaction is fraudulent and void. Evidence of a fraudulent intention in such case is unnecessary and of a fair intention, is inadmissible.
But where the sale is not absolute, and the contract is not in the terms or nature, inconsistent with the possession's remaining with the seller, the fraud, if any, is not a conclusion of law ; but a matter of fact, the existence or non-existence of which, is to be decided by the jury, from the evident and circumtances presented by each particular case.
*111 That the condition on which the right of Smithers to take back the girl, was reserved by the agreement, would be void and inoperative, if made with a fraudulent intent to injure the creditors or purchasers of Shirley, is a proposition which will not be controverted by the court ; but that it would have been erroneous for the court to have instructed the jury, as asked by Baylor, is equally incontrovertible. To have given such instructions, the court would have been compelled to have assumed, as matter of law, the fraudulent intent of Smithers and Shirley in making the condition, instead of leaving (as it correctly did,) the question of intention to be determined by the jury ; for *112 the motion of Baylor was not hypothecated on the opinion which the jury might entertain as to the intention with which the condition was made, but the court was asked to instruct the jury, that the condition was fraudulent and could not be enforced against Baylor, in consequence of the possession and ownership proved to have been exercised by Shirley over the girl, with the knowledge and consent of Smithers. The circumstances of possession, &c. so proved, are, no doubt, entitled to high consideration, in searching out the intention of the parties in making the condition ; but what the intention was, is clearly a question of fact, for the decision of the jury, and not a question of law, to be decided by the court. It is true, where the person executing an absolute bill of sale for a slave, retains the possession, the possession has been held conclusive evidence of the bill of sale being executed with a fraudulent intent; but there is a palpable difference between that case and the present. There the possession is incompatible with the deed, and the right which it purports to pass ; whereas, in this case, there is no such incompatibility. In that case, the bill of sale purports to pass the right to one, and the possession is in another ; but, in this case, assuming the evidence to prove the sale by Smithers to be conditional, after that sale there was a perfect consistency between the right of the parties and the possession. The right which Shirley gained by the sale, was only conditional, and the possession which he held was subject to the same condition. Whilst in that case, therefore, the possession may be conclusive as to the intention with which the bill of sale is executed, and consequently, competent for the court to pronounce, as matter of law, the effect of such a deed, the possession cannot be admitted to be so, in a case like the present; but the jury, in connexion with the circumstance of possession, should take into consideration the other evidence in the case, and decide on the fact of intention, from the whole of the circumstances taken together.
But this doctrine does not extend to cases where there has been an adverse possession of five years, without suit, &c.
5. If Shirley had remained in possession of the girl for five years before the commencement of this suit, it is conceded, that, as to his creditors and purchasers, the condition would have been void and inoperative ; for, after the conditional sale to him, the right of Smithers was in the nature of a reservation, dependent *113 on the performance of the condition by Shirley ; and there is a provision in the statute of frauds of this country, expressly declaring fraudulent all such reservations, where the possession remains with another for the space of five years, without demand made and pursued by due process of law, unless the reservation, &c. be declared by will or deed in writing, regularly proved and recorded ; and, in this case, there appears to have been no such will or deed proved and recorded. But the evidence shows that the possession had not remained with Shirley for five years before this suit was brought; and consequently, the provision of the statute to which we allude, cannot embrace the case.
There is a difference between a conditional sale and a mortgage, and there is no law requiring a deed evidencing a conditional sale, to be recorded.
If the contract between Smithers and Shirley could be construed into a mortgage of the girl, it would, no doubt, be inoperative, as to creditors and purchasers, under the law which requires mortgages to be recorded ; but the contract, as proved, we apprehend, cannot, with any propriety, be denominated a mortgage. At the time of the contract, the girl was the property of Smithers, and, to be a mortgage, the title should have passed by the contract to Shirley, subject, however, to be defeated on the performance of some act by Smithers. But we are told by the witnesses, that, instead of the title passing to Shirley, the girl was not to be his, unless he should pay the residue of the price agreed on by the parties, against a named period, and that sum has, in fact, never been paid. A contract thus in its terms conditional, without passing the title to the girl, cannot, therefore, be denominated a mortgage. It is emphatically a conditional salt, between which, and a mortgage, there exists an established distinction in the law. Considered as a conditional sale, therefore, and not a mortgage, the act which requires mortgages to be recorded, cannot be admitted to have any influence on the case. There might be as much propriety in enacting a statute requiring conditional sales to be recorded, as mortgages ; but we assume not to ourselves the prerogative of making laws ; it is our province barely to expound those which are made; and under the distinction which exists between mortgages and conditional sales, we cannot suppose, that a statute which barely requires the former to be recorded, should be construed to comprehend the latter. *114 There would certainly be as much propriety in construing such a statute to comprehend agreements whereby property is pledged, as conditional sales, and a pledge has been held by this court not to come within the influence of the act relative to recording mortgages.—See 2 Marsh. 331.
Upon the whole, we think the court below correctly withheld from the jury the instructions which were asked by Baylor. But we are of opinion that a new trial should have been awarded ; for, whilst we suppose the evidence proves the sale from Smithers to Shirley to be a conditional sale, it is pretty obvious, that before the possession of the girl was to be restored to Smithers, he was to refund the amount of the price advanced by Shirley ; and that amount is neither proved to have been paid or tendered by Smithers or his heirs or representatives. The verdict is, therefore, against evidence, and consequently, a new trial should have been awarded.
The judgment must be reversed with costs, the cause remanded to the court below, and further proceedings there had, not inconsistent with the principles of this opinion.
From the reasons assigned, and principles stated in this opinion, Judge Mills dissents, though, for other reasons, concurs in the reversal of the judgment.