KILLOUGH *versus* STEELE.

A bill of sale of personal property, with condition of defeasance or mortgage, founded on a *valuable* consideration, and *bona fide,* is not fraudulent, *per se.* under our státute of frauds, as to creditors not having actual notice of its existence, where the possession remains with the grantor, for more than twelve months from its date.

The terms *good consideration,* in the 3d section of our statute of frauds, where it is said that "this act shall not extend to any estate &c, which shall be upon *good consideration,* and *bona fide,* lawfully conveyed &c," must be construed to mean *valuable consideration.*

In error from Jefferson Circuit Court.

This cause originated in the trial of the right of property. An execution in the name of Jonathan Steele against the goods and chattels of John Killough, was levied on certain property, claimed by Allen Killough, who founded his claim on a bill of sale, with condition of defeasance, or mortgage, made by said John Killough to Allen Killough, dated 16th March 1827; which bill of sale was not recorded. The claimant also relied on possession under the bill of sale and on notice of its existence to the plaintiff in execution. It was proved, that the debt due to the plaintiff in execution was contracted in less than one year after the date of the bill of sale to claimant. The

judge, on the application of the claimant, instructed. the jury, that if the bill of sale was made to delay or defraud creditors, it was void; and although made *bona fide* and on valuable consideration, it was still void as to creditors, unless they had actual notice of its existence, or unless the possession of the property conveyed was delivered to the grantee, or he acquired visible possession of the same within one year from the date of the transfer; and that a possession acquired afterwards, although it should have been before the recovery of the judgment on which the execution was issued, was not sufficient to give validity to the sale.

The judgment of the Court made the property subject to the execution of Steele; but directed the costs of the suit to be paid out of the proceeds. Both parties being dissatisfied with this judgment, both joined in the prosecution of a writ of error.

SAFFOLD, J.—The contest arose on an issue to try the right of property in a slave, levied on as the property of John Killough by virtue of executions in favor of Steele the defendant in error, which slave was claimed by Allen Killough, pursuant to the statute, authorising this mode of proceeding, on the sheriff's return.

On trial, the jury found the property subject to the execution; whereupon the Court gave judgment that the sheriff should expose the negro to sale for the satisfaction of the executions against John Killough, besides the costs in that behalf expended.

At the next succeeding term, the record states, " the plaintiff came and moved the Court so to amend the judgment rendered at the last term, as that it may

stand against A. Killough, the claimant in execution, for the costs; which motion was granted."

The facts in evidence, are shewn by a bill of exceptions to have been, that J. Killough the defendant in execution, on the 16th March 1827, executed a mortgage of the slave to A. Killough, which mortgage had not been recorded.

On the 8th of August, 1828, the three executions in favour of Steele, issued by a justice of the peace, were levied on the slave. The debts thus sought to be satisfied, were contracted after the date of the mortgage, and within twelve months thereof.

The claimant relied on his mortgage, and on proof of possession under it, and on Steele's having notice of its existence.

It is further shewn by the exceptions that the Court charged the jury, that although there may have been no actual fraud—the contract entered into on a valuable and sufficient consideration, and fair, and *bona fide*—it was void as to Steele, unless he had actual notice of the existence of the mortgage, within one year from its date; or unless such a possession was given to the grantee within that time, as was calculated to give notice to the neighborhood; that though Steele had actual notice of the existence of the deed, before obtaining his judgment, yet if the notice was after twelve months from its date, and not before, the jury must find for the plaintiff in execution.

The Court charged further, that if such a possession was obtained before the expiration of twelve months as was not of a public nature, though a possession and control in fact, yet the jury were bound to find for the plaintiff, admitting the transaction to

have been *bona fide,* and on a valuable and sufficient consideration.

It is assigned for error.

1st. That the Court erred in the several opinions, to the jury, as stated.

2d. The judgment original and as amended was unauthorised, uncertain and insufficient.

It is contended on the part of the plaintiff in error, who was claimant below that the case is not within the statute of frauds so as to render the deed absolutely void, for want of possession, or of recording; that the statute does not embrace a case where the consideration is valuable and sufficient, and *bona fide*; that the instructions were inoperative, and can not be sustained, except on the ground, that want of possession is fraud *per se;* and that it is not necessary the possession should always be changed so as to be visible to the neighborhood.

On the contrary, it is argued, that both absolute and conditional sales, unaccompanied by possession, are to be governed by the same principles; that the want of possession in either case, is at least a circumstance from which fraud must be inferred, if unexplained; that this explanation on the part of the vendee, must be proof that the sale was not only *bona fide,* and on a valuable consideration, but also that the possession of the vendor was in pursuance of some agreement not inconsistent with honesty in the transaction.

Our statute of frauds, so far as material to this case, is substantially the same with the statutes of 13 and 27 *Eliz.,* the statute of frauds of Virginia, and of several of the other States of the Union; all of which are declaratory of the principles of the Com-

mon Law.   A material question raised in this case
is, does it fall within the influence of the principles
recognised by the statute ?

If any part of the statute can apply it can be no
other, than the latter clause of the 2d, section, which
declares, that where any reservation or limitation
shall be pretended to have been made of a use, or
property, by way of condition, reversion, or remain-
der, or otherwise, in goods and chattels, the posses-
sion whereof shall have remained in another three
years, without demand made and pursued by due
course of law ; the same shall be taken as to the
creditors and purchasers of the persons aforesaid, so
remaining in possession, to be fraudulent and void
within the act : and that the absolute property is
with the possession ; unless such reservation, or limi-
tation of use, or property, were declared by will, or
by deed in writing, proved and recorded as directed
in a previous part of the same section.   The parts
of the section immediately preceeding the clause re-
ferred to treat of conveyances of goods and chattels
only, or such as include lands also, and which are
not on consideration deemed valuable in law ; and
of pretended loans of goods and chattels to any per-
son with whom, or those claiming under him, pos-
session shall have remained by the space of three
years &c. and declares that unless all such convey-
ances, loans, &c., shall be duly proved and recorded
as therein directed, they shall be taken to be fraudu-
lent within the act.   Hence it would appear that the
reservations or limitations, by way of condition, re-
version or remainder, referred to in the same section,
were intended to apply to conveyances on considera-
tion not deemed valuable in law.   The third section

of the same act, greatly strengthens this conclusion, if the expression, " good consideration," therein is to be understood to mean *valuable,* or *good and valuable* consideration. It directs " that this act shall not extend to any estate, or interest in any lands, goods or chattels; or any rents, commons, or profits out of the same, which shall be ,upon *good* consideration, and *bona fide,* lawfully conveyed or assured to any person, &c.[a]

In the case of *Hodgeson* vs. *Butts,*[b] is to be found an exposition of the views of the Supreme Court of the United States, in reference to the Virginia statute, of which ours is a literal transcript. There a mortgage of personal property was the subject of adjudication, and which had not.been recorded. Chief Justice *Marshall* in delivering the opinion of the Court, stated the substance of the concluding members of the 2d section to be, " that deeds of personal chattels, not upon valuable consideration, where the possession remains with the donor ; or a reservation of interest in the donor, when possession passes to the donee, shall be fraudulent and void, unless proved and recorded according to the directions of the act :" and further remarked "that a mortgage made on a valuable consideration, would be very clearly included from the second section, although the act contained nothing farther on the subject. But to remove the possibility of doubt, the 3d section declares, that the act shall not extend to any conveyance made upon good consideration and *bona fide.* The meaning of the word *good* in the statute of frauds is settled to be the same with *valuable.*" He also observed in reference to that deed, "it is perfectly clear that the case is altogether omitted, or is provided for in the

[a] Aik. Dig. 245.

[b] 3 Cranch 155.

act concerning conveyances. In a country where mortgages of a particular kind of personal property are frequent, it can hardly be supposed that no provision would be made for so important, and interesting a subject. The inconvenience resulting from the total want of such a provision would be certainly great; and the Court ought not to suppose the case entirely omitted, if there be any legislative act which may fairly be construed to comprehend it. The act concerning conveyances, although not penned with the clearness which is to be wished, does yet contain terms, which are sufficient to embrace the case; and the best judicial opinions of that State concur in this exposition of it." The statute of Virginia refered to as embracing that case, and requiring mortgages to be recorded is—"the act for regulating conveyances"—the 4th section of which requires, among other enumerated conveyances, that "all deeds of trust and mortgages *whatsoever*" shall be void as to creditors and subsequent purchasers, if not acknowledged or proved, and recorded according to the directions of that act. All the other provisions of the act except in the particular case of marriage settlements, were adapted to the conveyance of lands; and in that case the act provided expressly for recording a settlement of chattels. But it was under the above recited provision of the statute that "all deeds of trust and mortgages whatsoever," should be recorded, that the Court decided the mortgage then in question to have been embraced, the object of which was to indemnify an endorser of notes against his liability as such. No similar provision, or any, authorising the same construction, is to be found in any of our statutes concerning conveyances; unless it be the act of

11th January 1828, more effectually to prevent frauds and fraudulent conveyances, and for other purposes"—which, having passed subsequent to the execution of this mortgage, can not affect it.

From a comparison of the statutes of 13 and 27 *Eliz.* with our statute of frauds, in relation to conveyances, it will clearly appear, that the phrase *good consideration*, in the 3d section of the latter, was derived from said English statutes, in which it frequently occurs in reference to *valuable* considerations, perhaps *good* also, in the ordinary acceptation of the word, or any consideration which is legal and sufficient, and *bona fide.* This term is used as a saving clause, in the nature of a proviso, to each of the English statutes, by which the various conveyances, made for the intent, or purpose to defraud, or deceive, are denounced as void. As a proviso to the statute of 27 *Eliz.* which avoids all conditional conveyances, reservations, or limitations of lands, under circumstances therein described, it is declared "that no *lawful mortgage*, made or to be made *bona fide*, and without fraud or covin, upon *good consideration* shall be impeached or impaired by force of that act" &c. By a previous part of the same statutes the meaning of these words, as therein intended and understood, is fully demonstrated. While treating of conveyances, and describing such as should be void, or valid, the phraseology is used, *purchases for money or other good consideration, &c.*

Our statute of frauds, it will be recollected, contains a clause in the 3d section, additional to any thing expressed in the English statutes referred to. It is that, if any conveyance be of goods and chattels, and be not on consideration deemed valuable in

the law, it shall be taken to be fraudulent within this act; unless the same be by will, duly proved and recorded; or by deed in writing, acknowledged or proved. If the same deed include lands, also in such manner as conveyances of lands are by law directed to be acknowledged or proved, or, if it be of goods and chattels only, then acknowledged or proved by one or more witnesses, in the Superior Court, or County Court, wherein one of the parties lives, within twelve months after the execution thereof; or unless possession shall really, and *bona fide*, remain with the donee. The Virginia statute contains substantially the same. Such is the time and manner of proving and recording conveyances, directed by the act, and to which reference is made in the succeeding part of the same, as already recited. I do not, however, concive that this member of the section can have any material influence on the decision of this case, either as respects the necessity of recording the mortgage, or the delivery of possession of the slave within twelve months; nor in determining the effect of the works "good consideration" as recognised in the subsequent section of the act. The member of the section, above quoted, refers expressly to donations or conveyances, on consideration of kindred or affection. It next treats of *loans*, and in the same general clause or sentence, describes the effect of any "reservation or remainder," as previously quoted; thereby all the objects of the latter members of the section, are placed on the same ground, on considerations "not deemed valuable in the law," in contradistinction to such as are.

Then, as the conveyance purports to be, and in point of fact, is assumed to have been, on a valuable

consideration—as the statute makes no distinction between mortgages and absolute deeds, as this conveyance is entitled to the benefit of any aid deriveable from the provisions of the third section of the statute referred to—a *valuable* being also a *good* consideration; and as the statute has recognised all conveyances as valid, " which shall be upon good consideration, and *bona fide*, lawfully conveyed or assured," the validity of the mortgage must depend upon the principles of the Common Law, as declared or recognised in the said 2d section of the statute of frauds and perjuries. Independently of the authority referred to, for the construction of the statute, in reference to the words "good consideration," it would be evidently unreasonable, and inconsistent with legal analogy, to give to conveyances, because founded on relationship or affection, greater validity than such as are for a valuable consideration, when in all other respects equal; and this in opposition to the rights of creditors, or subsequent purchasers.

The instructions of the Circuit Court having been given on the hypothesis, that this deed was on a valuable and sufficient consideration, and the transaction *bona fide*, it now only remains to be considered whether or not the mortgaged property was "lawfully conveyed or assured." The instructions to the jury were, in substance, that however sufficient the consideration, and *bona fide* the contract, the mortgage was void as to Steele, the creditor, unless he had actual notice of its existence within one year from its date ; or unless such possession was given to the mortgagee, within that time, as was calculated to give notice to the neighborhood—that neither notice at a later period, or private or secret possession and con-

trol, at an earlier day, would give validity to the contract. Thus the important doctrine of *fraud per se*, for the want of a change of the possession of the property, or of notice to creditors of the conveyance, is involved, and must determine this case.

The principles maintained by many decisions, both in England and America, by Courts of the highest respectability, would be fatal to this mortgage in terms of the charge given by the Circuit Judge. These cases, or many of them, are referred to and commented on in decisions of this Court, in *Hobbs* v. *Bibb*,[a] and *Ayres* v. *Moore*;[b] in the former of which, however, this Court adopted a different doctrine, as a majority conceived, on sounder principle, rather than on weight of authority. In that case it was ruled, that an absolute bill of sale, by a debtor in failing circumstances, and in a contest between the vendee and a creditor, was not *fraudulent per se*, for the reason alone, that possession of the property did not *accompany and follow the deed*. That decision had influence on the case of *Moore* vs. *Ayres*, and led to one somewhat similar, but with some slight yet salutary qualifications. They both however, go the length to maintain, that the want of possession in the vendee, especially in absolute conveyances, importing such possession is a strong *badge* or *indicium* of fraud, constituting at least *prima facie* evidence of it ; and that this evidence should govern the result, unless the legal presumption should be rebutted to the satisfaction of the jury—yet that it was the province of the jury to determine, and if in fact, there was a valuable consideration, and no fraud, the conveyance should be sustained.

My own impressions respecting the authority for,

a 2 Stew't. 54.
b Ib. 336.

and the effect of this principle are fully stated in the case of *Moore* vs. *Ayres* : hence it is now sufficient for me to say *ita lex scripta est.* It is moreover to be observed, that the leading cases on this subject, in both countries—*Edwards* vs. *Harbin,*[a]—and *Hamilton* vs. *Russell,*[b] recognise a material distinction, respecting the necessity of possession in the grantee, between absolute and conditional sales    They maintain, that in the former, importing a change of possession, and use, when the contrary is found to be the fact, the possession does not accompany and follow the deed, and that the suspicious inconsistency, constitutes *fraud in itself,* as against creditors and subsequent purchasers, who may be injured thereby. But that if the failure to change the possession be consistent with the object of the deed, as where the article contracted is incapable of immediate delivery, or where the nature does not require it, or where the deed is conditional and the vendee is not to have the possession until he has performed the condition, in such cases the sale is not fraudulent *per se,* for there the possession "accompanies the deed," within the meaning of the rule.    See also the cases, *Bucknal* v. *Roeslow*—*Cadogan* vs. *Kennet*[d]—*Alexander* vs. *Deneale*[e]—*Dawes* vs. *Cope.*[f]

It is true that various other cases of like respectable authority, have ruled different doctrines—some that the deed, whether absolute or conditional, was void unless the possession, where practicable, actually passed to the vendee, as in the case of *Sturdevant* v. *Ballard*[g]. In others, the rule has been, that the failure of a change of possession, in either case, is but a badge, or presumption of fraud, which like all other presumptions should be left with all other circum

*[a] 2 TermR. 587.*
*[b] 1 Cranch, 309.*

*[c] Prec. in Ch. 285.*
*[d] Cowp. R. 432.*
*[e] 2 Munf. R. 341.*
*[f] 4 Binney's Rep. 258—2 Kent's C. 403.*

*[g] 9 Johns.R. R. 337.—2 Kent's C. 407.*

stances of the case, under the instruction of the Court, to the jury who must decide whether there be fraud in fact.

The preponderance of authority in other Courts appears to sustain the distinction more favorable to mortgages, or other conditional sales, where there has been no change of possession ; and the decisions of this Court (to which reference has been made,) have gone far to preclude the idea of constructive fraud for want of possession : hence I necessarily arrive at the conclusion that the mortgage was not void on the ground, that the possession of the slave was not transferred to the mortgagee within twelve months from the date of the deed ; provided the claimant could explain this *prima facie* evidence of it, so as to satisfy the jury of the existence of the valuable consideration, and that the contract was *bona fide*. Yet though there may have been a valuable and sufficient consideration, if the object of the contract was, and the mortgagee united in the design, to defeat, hinder, or delay creditors, the deed was, in fact, fraudulent and void, and such should have been the charge of the Court to the jury.

The branch of the instructions, that the possession must also have been of a public nature, I deem immaterial. The general instructions having been given, that unless *such a possession* was transferred to the mortgagee as was calculated to give notice to the neighborhood, the mortgage was void—its validity on the ground of a clandestine possession was consequently denied. Nor could I hesitate to believe, a private, secret or artificial change of possession, more exceptionable than no change. With respect to the alternative of actual notice of the mortgage to the cre-

ditor, which was held material in the instructions to the jury, it is deemed sufficient to say, I can imagine no kind of conveyance, which the law does not require to be recorded, and in a contract that may be valid without changing the possession of the article, which the law renders constructively void for want of notice in any other form or manner.

It may be, and has often happened, that a subsequent conveyance, on a valuable and sufficient consideration, has been defeated in a conflict with a prior purchaser, who has failed or neglected to record his deed as required by law, on the ground alone of notice otherwise acquired by the subsequent purchaser. The law is thus established on the principle, that the latter purchaser had knowledge of the existence of the prior lien, and that he was contracting litigation, and probably with a view to effect fraud, or at least injustice. To tolerate such would violate the policy and spirit of the law.

Notice through the records, or from actual possession, when necessary, is the only description of notice which the law recognises in the determination of questions of *fraud per se*, so far as actual notice, or any thing tantamount thereto is material. Doubtless, the publicity of contracts, or of claims to property, as well as recording deeds, or changing the possession of property sold, which the law does not especially require to be done, may, in many cases, afford for the jury highly material evidence, on which to determine the faith of the contract, and the question of fraud *in fact*. But under the precedents referred to, by which this Court is governed, Judges at *nisi prius*, can only charge, in relation to these indications of fairness, which the law does not imperiously require,

that the absence of any or all of them, constitutes *badges* or *indicia of fraud*, or is *prima facie* evidence of it; and that it is the duty of the jury to find accordingly, unless other circumstances, or all the facts taken in connection, sufficiently rebut the presumption. The fact of the solvency or insolvency of the mortgagor, which is not shewn of record, was (as is contended by the plaintiff's counsel) entitled to its influence as evidence before the jury.

According to the views I have taken of the case, there was error in the instructions to the jury.

The other assignment need not be considered. In the conclusion to which I have arrived, the Court are unanimous.

Let the judgment be reversed, and the cause be remanded.

COLLIER, J.—The material questions arise out of a bill of exceptions taken on the trial to the instructions of the Judge to the jury. From which it appears, that Allen Killough the claimant of property levied on, to satisfy an execution against John Killough, in favour of the defendant in error, "relied on a bill of sale with condition of defeasance, or mortgage, made by the defendant in execution to the claimant, dated 16th March, 1827; and also relied on possession under said deed, and on notice to the plaintiff in execution of the existence of the deed or mortgage. The bill of sale was not recorded. It was proved that the debt to the plaintiff was contracted in less than one year after the date of the deed to the claimant."

The instructions of the Judge were substantially as follows: that if the conveyance from John to Al-

len Killough was made to delay or defraud creditors, as to such creditors it was void—and further, that though it was founded upon a valuable consideration, and *bona fide*, it was notwithstanding void as to creditors, unless they had actual notice of its existence ; or unless the possession of the property conveyed was delivered to the grantee, or the grantee acquired a visible possession within twelve months after the date of the tranfer : and that a possession after the expiration of twelve months, though before the defendant recovered his judgment, was not sufficient to give validity to the deed.

The judgment condemning the property to the defendant's execution directs the costs of this suit to be paid from its proceeds, hence both the claimant and defendant in execution, have joined in the prosecution of a writ of error.

The first branch of the instructions, which asserts the mortgage to be void if made to delay, hinder or defraud creditors, is sustained as well by the Common Law, as the statute of frauds ; and in accordance with it, the law has been so frequently declared, as not now to allow of disputation.

The second branch is founded in the supposition that actual or constructive notice is essential to a conveyance of personal property as against creditors; and was doubtless the result of so construing the statute of frauds as to bring within the operation of the 2d section of that act, transfers induced by a valuable consideration. Hence it becomes material to adjust the true interpretation of that provision of the act, so far as it has been supposed to bear upon this case. So much as need be noticed is as follows : " and moreover if any conveyance be of goods and chat-

tels, and be not on consideration deemed valuable in the law it shall be taken to be fraudulent within this act; unless the same be by will duly proved and recorded; or by deed in writing acknowledged and proved &c., within twelve months after the execution thereof; or unless possession shall really *bona fide* remain with the donee." These words indicate their own meaning so strikingly, as to leave but little room for the application of the rules of construction. Considerations are of two kinds, good and valuable; these are dissimilar in their nature, and the legal principles adduced from them are alike so. That, conveyances founded on considerations of the latter description are not embraced by this provision, appears in express terms; but it is insisted, that the positive language employed, is countervailed by the 3d section, which is quite as explicit as the 2d; and is expressive of an intention by the legislature to exclude all conveyances, founded on a good consideration, from the influence of the act. The 3d section is in these words : " this act shall not extend to any estate or interest in any lands, goods or chattels; or any rents common or profit out of the same; which shall be upon good consideration, and *bona fide* lawfully conveyed or assured to any person or persons bodies politic or corporate." If this section receive a literal construction, the 2d section, so far as we have considered it, would be rendered nugatory; but by supposing " good" to mean " valuable" the whole act is made operative; and this construction is authorised by the trite maxim *ut res magis valeat quam pereat.*

Again : statutes should be construed in reference to the analogies of the law. The obvious discrepancy between the 2d and 3d section is such, as to

forbid a literal interpretation from being placed on each; and as contracts founded on good considerations are less favoured than those founded on valuable considerations, the parts of the act under examination must be holden to apply to contracts of the former, in exclusion of those of the latter description.

In *Hodgeson* vs. *Butts*, a legislative act of Virginia analogous to our statute of frauds was brought to the view of the Court, in relation to which the Chief Justice, delivering the opinion of the Court, observes, " A mortgage made on a valuable consideration would be very clearly excluded from the 2d section although the act contained nothing further on the subject. But to remove the possibility of doubt the 3d section declares that the act shall not extend to any conveyance made 'upon good consideration and *bona fide.*' The meaning of the word good in the statute of frauds is settled to be the same with valuable." Here is an authority in point, upon both the provisions of the act, in which the interpretation we give them is considered as so manifestly just as not to require the aid of argument.

By the last section of the 13 *Eliz. c.* 5, (a statute enacted professedly for the security of creditors against fraudulent conveyances,) it is provided that, that act " shall not extend to any estate or interest in lands, tenements, hereditaments, leases, rents, commons, profits, goods or chattels, had made, conveyed, or assured, which estate or interest is or shall be upon good consideration, and *bona fide,* lawfully conveyed, &c." In the decisions upon this act ' good' has been always held to mean ' valuable' and our research does not furnish an authority where it has been se-

riously questioned. All transfers of property made in good faith and upon valuable consideration have been considered exempt from the operation of the act, while those upon good consideration are esteemed invalid as against the then existing creditors of the grantor—*Cato's adm'r. vs. Easley.*[a]

[a] 2 Stewart, 214.

Having ascertained that the mortgage does not come within the provisions of the 2d section of the statute of frauds, it is material in the next place to enquire whether the charge of the Court can derive aid from any other enactment or from the Common Law. All of our registry acts previous to the date of the mortgage, apply in terms to conveyances of real estate, except the act of the 29th Dec. 1823—"to prevent fraudulent conveyances" which relates to mortgages when the property conveyed is taken from one county to another, &c.; but does not authorise their registration under other circumstances. Neither the common or statute law requires that the creditors of the mortgagor should have actual notice, as essential to the validity of the mortgage, against them. The charge of the Court in supposing this to be necessary, in the absence of proof of registration, is therefore erroneous.

But notwithstanding this error the judgment may be sustained, if the proposition be just, that possession must pass to the mortgagee in order to give effect to the mortgage as against the creditors of the mortgagor. This proposition would seem to be much freed from difficulty by the decision of this Court in *Hobbs* vs. *Bibb,*[b] in determining that the circumstance of the possession remaining with the vendor in the case of an absolute sale was only *prima facie* evidence of fraud—subject to explanation. The trans-

[b] 2 Stew't. 54.

fer in question is not absolute, but conditional; let us therefore enquire what are the decisions upon the point of possession, applicable to such a state of fact.

In *Hudson* vs. *Warner et. al.*[a] it was held, that the retention of personal property by a vendor will not prejudice its transfer, where his deed showed that the sale was not to have its completion immediately, but was prospective to a future event: till that future time his possession is entirely consistent with his deed.

So in *Conard* vs. *The Atlantic Insurance Company*,[b] it was decided, where the sale is not absolute but conditional, the want of possession, if consistent with the stipulations of the parties, and *a fortiori* if flowing directly from them, has never been held to be *per se* a badge of fraud. To the same point, see *Baylor* vs. *Smithers*,[c] *Croft* vs. *Arthur*,[d] *Trotter* vs. *Howard*.[e]

The record does not discover whether the mortgage became forfeited prior to the levy of the defendants execution: before that time the retention of possession was compatible with the transfer, and not in itself a badge of fraud. But if a morgagor retain the possession after the forfeiture of the mortgage, for a time, within which the mortgagee might have acquired it, such continued possession, is *prima facie* evidence of fraud, and the principles of decision in *Hobbs* vs. *Bibb*, would be applicable. In any point of view the charge is erroneous in supposing the retention of possession without actual notice of the mortgage to the defendant, to avoid it *per se.*

This view of the case being decisive of its merits —the other errors assigned need not be considered

[a] 2 Har. & Gill. 415

[b] 1 Peters 386.

[c] 1 Litt. 112

[d] 3 Dess. 229.

[e] 1 Hawke's 320.

I concur with the Court in the conclusion that the judgment should be reversed and the cause remanded.

TAYLOR, J. not sitting.