## MYERS v. PEEK'S ADMINISTRATOR.

1. Although a deed undertaking to convey property, recites a valuable consideration, as an inducement to its execution, it is nothwithstanding, competent for a creditor of, or purchaser from the grantor, to show, that it was intended as a mere gift.

2. A deed of gift of goods and chattels, where possession remains with the donor, will not, under the second section of the statute of frauds, vest a title in the donee, unless it is recorded; yet, it may be regarded as a parol declaration of the donor's wishes, and to make it operate as a gift, it is necessary to show that the subject was actually delivered.

3. Where a gift has not become complete by the registration of the deed, or the delivery of the thing. an undertaking by the donor to deliver the property at some particular place, is gratuitous, and confers upon the intended donee no legal right.

4. Where a person has the possession of property, under an agreement with another, that he will deliver it to him at a place designated, within a definite period, if the person for whose benefit the delivery was to be made, acquiesces in the failure to comply with the agreement without seeking to recover the property, he must (within the second section of the statute of frauds,) be considered as permitting the possession to remain unchanged.

5. *Semble.* Where the owner of personal property, voluntarily parts with the possession to another person, either with or without an express contract, there must be a " will or deed," declaring the "loan, reservation, or limitation of use, or property," proved and recorded, as required by,the second section of the statute of frauds; or else the absolute property shall be taken to be with the possession in favor of creditors and purchasers.

6. The limitation prescribed by the second section of the statute of frauds, vests a complete title in the possessor of personal property, in favor of creditors and purchasers, which cannot be defeated by proof, that the purchaser had notice of the circumstances under which the possession was permitted.

7. Where a person purchases property with a knowledge of a defect in the title of a *remote* vendor, he may show in defence of his right, that his *immediate* vendor had no such notice.

Writ of error to the Circuit Court of Walker.

THIS was an action of trover by the defendant in error, against the plaintiff, to recover damages for a negro slave named Lucy, alledged to have been converted while she was the property of the intestate. The cause was tried on issues upon the pleas of " not guilty" and " the statute of limitations."

On the trial, the defendant below excepted to the ruling of

the presiding Judge. From the bill of exceptions, it appears, that the plaintiff offered in evidence a bill of sale, dated the 4th November, 1831, executed by James Peek, by which he professes to sell the slave in question to James R. Peek, the intestate, in consideration of one hundred dollars, " in hand paid." Sutton, a subscribing witness, testified that the bill of sale was executed in his presence; the consideration for the same, was the " natural love and affection of the grantor for his son, the grantee ; and that the consideration expressed of one hundred dollars, was merely formal." That the slave was, at the time of the gift, about ten years of age, and because she was so young, was left with the donor to be carried by him to the State of Missouri, whither he expected to remove the following year ; the donee, at the time of the gift, was removing to that State ; but the donor abandoned the intention of following him. The slave never went into the possession of the donee, but remained with the donor.

Sutton, upon cross-examination stated, that he was the son-in-law of the donee, and that his wife was living, and entitled equally wtih the other children, to a distributive share of her father's estate. It was shown that the estate of the donee had been reported insolvent. Whereupon the counsel for the defendant, moved to exclude the testimony of the witness, who thereupon executed a release, of the following tenor, viz :

" Know all men by these presents, that I, John C. Sutton, do hereby release all my right and title, in and to the estate of James R. Peek, deceased, to the administrator and to the heirs and distributees of said James R. Peek, deceased. Witness my hand and seal, this 11th day of May, 1841.

JOHN C. SUTTON, [<i>Seal.</i>]

Signed, sealed, acknowledged and delivered in open Court, 11th May, 1841.

Test,                               T. A. HEARD, Cl'k."

It was still insisted for the defendant, that the witness could not render himself competent by a release, and that if he could, the release executed, was insufficient; but the Court ruled, that the release made the witness competent. The plaintiff's counsel then offered to re-examine the witness; but it was not insisted on by the defendant, and consequently, not done.

The plaintiff then offered, evidence, tending to show, that the defendant obtained possession of the slave in 1837, and that she had remained in his possession ever since.

John Peek, a son of the donor, was introduced by the plaintiff, but objected to, by the defendant, on the ground of interest—the objection was overruled. This witness testified, that before his father mortgaged the slave in question, to the defendant, he was distinctly informed, that she belonged to the intestate, but not that a bill of sale had been executed. It was proved, that the defendant, before he took a mortgage of the slave from the donor, inquired of a witness, whether the intestate had a bill of sale for her, to which the witness replied, that he did not know; whereupon, he said, he would risk the purchase. It was also shown, that subsequent to the mortgage, the defendant said the slave was claimed as the property of the intestate, but that his mortgage would soon run out, and then she would belong to him.

The paper purporting to be a bill of sale from James Peek to James R. Peek, did not appear to have been acknowledged or recorded.

The defendant, to maintain the issues on his part, introduced and proved a mortgage of the slave in question, from James Peek, the donor, dated the 14th December, 1837, and purporting to secure the sum of three hundred dollars, lent by the mortgagee to the mortgagor. It was shown, that the consideration of the mortgage was truly expressed therein, and that the defendant had taken possession of the slave, when the same was executed.

The defendant having proved the hand-writing of James, Peek, read an order from him to the defendant, dated, 4th Jan. 1838, requesting him, upon the payment of three hundred dollars, to deliver the negro, Lucy, to James Abel. The defendant then proved, by a subscribing witness, a bill of sale from James Abel to himself, for the slave in question; that paper was dated the 26th of January, 1838, and expressed a consideration of six hundred dollars. The deposition of James Abel was next read, with a bill of sale thereto annexed, dated the 4th of January, 1838, by which James Peek, in consideration of eight hundred dollars, bargained and sold to him, the girl Lucy.

The defendant then proved, that James Peek, some time before the sale to Abel, stated that Lucy was his property, and after the sale, stated that he had sold her to Abel for cash, and had been paid.

The plaintiff then proved, that James Peek was seventy or eighty years of age, at the time of the sale to Abel. There was some evidence that, at that time, the mental powers of the vendor were impaired, (though, the evidence on that point was contradictory,) and shortly after, he died. It was further proved that, before the execution of the mortgage to the defendant, James Peek admitted that he held the slave for the intestate. There was no proof of adverse possession, before the loan of the money, which the mortgage was intended to secure. The plaintiff offered evidence, tending to show the value of Lucy, and that James Abel had practised a fraud on his vendor, in purchasing her. This was all the material evidence in the cause.

The objections to the evidence are duly reserved in the bill of exceptions.

The counsel for the defendant prayed the Court to instruct the jury.

1. If they believed the consideration of the bill of sale made by James to James R. Peek, was natural love and affection, and the slave was left with the former, and the bill not recorded and proved, no title to her vested in the latter.

2. If they believed, that James R. Peek, left the slave in question, in the possession of his father for three years before the bill of sale was made by James Peek to Abel, without demand made and pursued by due course of law, then the plaintiff could not recover, although the defendant had notice of the outstanding claim of the intestate.

3. If they believed the defendant was not a participant in the fraud, which Abel may have practised upon James Peek, then the plaintiff could not recover.

4. If the believed, the defendant acquired the peaceable possession of the slave under the mortgage to him, then it was essential to the plaintiff's right to recover, that a demand should have been made before suit brought.

5. That, as this suit was not instituted within six years, from

the date of the bill of sale from James to James R. Peek, the plaintiff could not recover.

Which several instructions the Court refused to give, as prayed. But charged the jury,

1. That natural love and affection, was a good consideration in law, and if they believed, that James Peek conveyed the slave in question, to James R. Peek, that the property vested in the latter, notwithstanding, the conveyance was not proved or recorded; yet, if the slave was left with the donor, his creditors or a subsequent purchaser, from him would be protected.

2. That three years peaceable possession of personal property. without demand made and pursued by due course of law, would give the possessor such a title, that his creditors and purchasers from him, would be protected in their claims and purchases; but if a purchaser knew, that the property was merely loaned, he would not be entitled, as against one having a better title than his vendor.

3. That if Abel obtained the slave in question, from Peek the father, by fraud, he acquired no property in her; that the fraud, if established, would vitiate the transaction; and that notwithstanding, the defendant was no party to the fraud, yet, if Abel had no title, he could impart none to him.

4. That if the defendant acquired possession of the slave lawfully, in virtue of the mortgage or otherwise, the plaintiff should prove a demand in order to entitle himself to the action; but if the possession was tortious, or a conversion was shown, then no demand was necessary; and if the defendant purchased the slave knowing that his vendor had no title, and converted her to his own use, then no demand was necessary.

5. That the intervention of six years between the date of the bill of sale from James to James R. Peek, and the commencement of the suit did not necessarily bar the action. That if James Peek held the property for his son, the statute of limitations did not begin to run, until his possession, became adverse to that of his son.

CRABB & COCHRAN, for the plaintiff in error.
L. CLARK, for the defendant.

COLLIER, C. J.—Although the paper by which James Peek proposed to transfer the slave Lucy to the intestate, recites a valuable consideration, yet it is competent for a creditor or purchaser to show, that the transfer was not induced by money, or any thing of value; but that the true consideration was, the natural love and affection which the father cherished for his son; and as the proof shows such to have been the character of the transaction, we will consider it upon the hypothesis, that it was intended as a gift.

By the second section of the statute of frauds, it is enacted, that if "any conveyance of goods or chattels, and be not on consideration, deemed valuable in law, it shall be taken to be fraudulent within this act; unless the same be by will, duly proved and recorded, or by deed in writing, acknowledged and proved," &c., "within twelve months after the execution thereof; or unless possession shall really and *bona fide* remain with the donee." It is not pretended, that the deed of gift in question, was acknowledged or proved and recorded; for the bill of exceptions explicitly informs us, that no such proof was adduced. It does not appear, that the slave was ever delivered to the donee, or that the donor, for a single moment, relinquished the possession—the bill of exceptions merely reciting, that it was proved she was left with the donor, on account of her tender years, &c. The deed not being recorded as required by the act. it was insufficient *in itself* to pass the title; but could only "be regarded as equivalent to a parol declaration of the donor's wishes;" and in order to effectuate the object proposed, it is necessary to show, that the subject of the gift was actually delivered. [Seawell v. Glidden, 1 Ala. Rep. N. S. 52. is an authority very full to this point.]

Assuming the transaction between James Peek and the intestate, to have been intended as a gift, if the intention was never consummated the right of property remained unchanged, and the contract by which the father agreed to carry the slave to Missouri, was a mere gratuitous undertaking, imposing no legal obligation and conferring no legal right.

Let it however, be supposed, that the intestate acquired the slave by a purchase for a valuable consideration. or that all the constituents of a gift *inter vivos* were shown, and we will con-

sider whether the circumstances under which she was left with James Peek, constituted him a *loanee.* It was proved, that at the time of the transaction between the father and son, the latter was removing to the State of Missouri, and the former expected to remove thither the next year, and that the slave was left with him to be carried to his son; but he abandoned the design of removing, and she continued in his possession for more than six years, and until within a few months of his death. The circumstances under which the slave was left with James Peek, did not constitute a loan *eo instanti*, but the transaction was, what is technically called *a mandate*, viz.: a bailment of goods without reward, to be carried from place to place, or to have some act performed about them.

But although, such was the character of the bailment at the time it was made, yet the bailee cannot be considered a mandatory, as against his creditors and purchasers after the expiration of such a length of time as would warrant the inference, that James R. Peek, was advised of the abandonment of his intention to remove to Missouri. After that time, if no demand was made, or effort to recover the slave. the possession of the father would be regarded as permissive, and though, there was no contract for a loan, yet the law would consider him as a depository, holding for the benefit of the son, authorized to employ the slave in ordinary service, and bound to deliver her up when required. It may be well questioned whether James Peek incurred a legal obligation, to perform his engagement; for it has been repeatedly held, that where one party entrusts the performance of a business to another, who undertakes to do it gratuitously, but wholly omits it, no action will lie for the *nonfeasance;* but if he enters upon its execution, and does it amiss, through the want of due care, by which damages ensue to the other, an action lies for the misfeasance. [Thorne et al., v. Deas, 4 Johns. Rep. 44; Rutgers v. Lucet, 2 Johns. cases, 92; Else v. Gatward, 5 T. Rep. 143.]

Taking it then, that the possession of James Peek, in a reasonable time after he declined removing, was tacitly, if not expressly permitted, especially in the absence of proof showing it to have been tortious, or in any manner objected to, we think the law will regard it as a loan, within the last member of the

second section of the statute of frauds, which enactment is decisive to show, that the rights of creditors and purchasers are paramount. That section, after providing for conveyances of goods and chattels, not founded on valuable consideration, proceeds as follows : " And in like manner, where any loan of goods and chattels shall be pretended to have been made to any person, with whom, or those claiming under him, possession shall have remained by the space of three years, without demand made and pursued by due course of law, on the part of the pretended lender ; or where any reservation or limitation shall be pretended to have been made, of a use or property, by way of condition, reversion, remainder, or otherwise, in goods or chattels, the possession whereof shall have remained in another, as aforesaid, the same shall be taken, as to the creditors and purchasers, of the person aforesaid, so remaining in possession, to be fraudulent within this act ; and that the absolute property, is with the possession ; unless such loan, reservation, or limitation of use, or property, were declared by will or deed, in writing, proved and recorded as aforesaid." [Aik. Dig. 207.]

The provision which we have cited, does not form a part of the 29 Chas. 2, but is to be found in the statute of frauds, as enacted in Virginia, Kentucky and Tennessee ; the only material difference being a limitation of five, instead of three years, as in this State. Several decisions have been made in the two former States, touching this part of the statute, which as they may serve to aid us in its construction, we will briefly notice.

In Beasly v. Owen, 3 H. & M. Rep. 456, Judge Tucker thought, that the object of the statute of frauds and perjuries was to shut out all questions respecting property held in possession by a *debtor* or *vendor*, for the space of five years, as between a *creditor* of, or a *purchaser* from the person in whom such *possession* had remained without demand for that length of time, and the person claiming such property as his own, by virtue of any loan, reservation, or limitation of a use thereof, or property therein, unless such loan, &c., were declared by will or deed in writing, proved and recorded, as by that act is required. The learned Judge was consequently, much inclined to doubt, whether parol evidence of the loan of a slave, or

of the condition of such a loan, was admissible in a contest between a creditor or purchaser from the person in possession. after that possession shall have continued peaceably, and without demand, for five years. To sustain this view, the cases of Jordan v. Murray, 3 Call's Rep. 85, and Turner v. Turner, 1 Wash. Rep. 139, were cited. And it was decided in the case of Beasley v. Owen, that the recording of a deed or will, any time before the expiration of five years, was a sufficient declaration within the statute, to protect the rights of the lender or person having the absolute property against the creditors of, or a purchaser from the possessor. To the same effect is Ferguson, &c., v. White, 1 Marsh. Rep. 7.

In Baylor v. Smither's heirs, 1 Litt. Rep. 112, it appears, that an agreement was made between Shirley and the ancestor of the defendants, for the purchase and sale of a negro girl. By the agreement. Shirley was to pay four hundred dollars for the girl, part of which, was to be paid down, and the residue to be paid at some future period; but it was agreed, that if the residue, so thereafter to be paid, should, in fact, not be paid, the girl was to be returned to the ancestor, and the amount received by him refunded to Shirley. The Court said, "if Shirley had remained in possession of the girl for five years, before the commencement of this suit, it is conceded, that as to his creditors and purchasers, the condition would have been void and inoperative; for, after the conditional sale to him, the right of Smithers was in the nature of a reservation, dependent on the performance of the condition by Shirley; and there is a provision in the statute of frauds, in this country, expressly declaring fraudulent, all such reservations, where the possession remains with another for the space of five years, without demand made and pursued by due process of law, unless the reservation, &c., be declared by will or deed in writing, regularly proved and recorded."

The Court of appeals of Virginia, have decided, that five years uninterrupted possession of slaves, under a loan not evidenced by such a written declaration as the statute requires, vests a title in the loanee, which inures in favor of his creditors, and cannot be divested by his returning the same to the lender, after the expiration of that period. (Garth's Ex'r. v.

Barksdale, 4 Munf. Rep. 101.)  And it was held by the same
Court, that where the lender of slaves demands and receives
them of the loanee, and thereupon immediately redelivers
them to him to be held on the same terms as they were previ-
ously, such demand, receipt and redelivery being *in private*,
shall not be sufficient to prevent the loanee's possession, from be-
ing considered as continuing in favor of creditors and purchas-
ers.  And although, a loan, or reservation be not declared in the
manner prescribed by the statute; so that the property after the
expiration of five years, becomes subject to the loanee's debt,
yet it shall be effectual, as between the parties and their repre-
sentatives.  (Boyd and Swepson et al. v. Stainback et at. 5
Munf. Rep. 305.)

And in Kentucky it has been determined, that where a slave
remains in the possession of a person for more than five years,
without any evidence in writing, of a reservation, &c., he be-
comes liable for the debts of such person; and such a conse-
quence will not be avoided, by showing that the possessor ac-
quired the property in trust for another.  (Craig v. Payne, 4
Bibb's Rep. 337.)

In Gay v. Moseley, 2 Munf. Rep. 443, it was decided, that
where the loanee of a slave retained possession of her for
more than five years, without any written declaration thereof,
being made and recorded, as required by the statute of frauds
and perjuries, the creditors of, or a purchaser from such
loanee, would have a better claim to the slave, than the lend-
er; although they had notice of the circumstances under which
their debtor or vendor held the possession.

The cases cited, serve to show, that in order to bring a case
within the provision of the statute of frauds we are considering,
it is not necessary to prove, that the possession of the debtor
or seller should be under a contract of bailment, technically
called *commodatum*, or *a loan for use*.  They maintain, that
where the owner of personal property voluntarily parts with
the possession to another person, either with or without an ex-
press contract, that there must be a " will or deed," declaring
the " loan, reservation, or limitation of use, or property" prov-
ed and recorded as required by the statute ; or else the abso-
lute property shall be taken to be with the possession in favor

of creditors and purchasers. That the act was intended to suppress frauds and perjuries, we think, abundantly appears, both from the title and terms, in which it is expressed; and that it should receive a liberal interpretation in advancement of the ends proposed, is what will not be disputed at this day. (Bank of the U. S. v. Lee et al. 13 Pet. Rep. 101; Cutter v. Hinton, 6 Rand. Rep. 509.)

The last member of the second section is not restricted to a "*loan*," but extends to a case, "where any reservation or limitation shall be pretended to have been made, of a use of property, by way of condition, reservation, remainder, or otherwise, in goods and chattels, the possession whereof, shall have remained in another." These words are of exceedingly extensive meaning, and in order to promote the intention of the legislature, may, with perfect propriety, embrace a "reservation or limitation," not only *expressed and stipulated* by the parties, but one which the law *implies* from a given state of facts. The terms, "or otherwise," apply to every conceivable "reservation or limitation," whether they are to operate by way of "condition, reservation, remainder," or in any other manner known to the law.

The case of Gay v. Mosely, is a direct authority to show, that the limitation prescribed by the statute, vests a complete title in the posssessor, in favor of creditors and purchasers, and that the title of a purchaser from him, cannot be defeated by proof that such purchaser had *notice* that his possession was merely permitted by another, to whom the absolute property belonged; unless there was a "reservation or limitation," declared, proved and recorded as the act directs. This decision, we think, is defensible not only upon a just construction of the act, but upon authority also. The statute, in the particular in which we are examing it, cannot be regarded as an ordinary registry act, intended to give notice of a writing, by authorizing its registration in an office designated for that purpose. It proposes to effect some thing more—it provides the manner in which one person shall retain his right to personal property, which he permits to go into the possession of another, and declares that if the directions of the act are not observed, the claims of creditors of, and purchasers from the possessor,

shall prevail against the proprietor, after the possession shall have continued for three years. Such a possession does not create a mere presumption of fact, that the title has been relinquished, but it authorizes a legal conclusion in favor of creditors and purchasers, which cannot be gainsayed; it relieves them from the necessity of inquiring into the state of the title, and excludes all evidence tending to show that they were advised of it. Notice in such a case can have no more influence upon the rights of a purchaser, than if the subject of the sale had been real estate, to which a third person claimed title under a previous verbal contract, which was wholly unexecuted. Besides, the statute declares that, where there is no reservation or limitation by will, &c., proved and recorded in conformity to its provisions, after three years such pretended limitation or reservation, " shall be taken as to the creditors and purchasers of the persons aforesaid, so remaining in possession, to be fraudulent within this act." Here is an unequivocal declaration, that a pretence of right by the lender, &c. shall be deemed a fraud on creditors and purchasers. And upon no correct principles of reasoning can notice to a purchaser expurgate the fraudulent act of the pretended owner of the property.

But we are not unaided in the construction of our statute; many decisions have been made upon a similar enactment, so far as the point before us is concerned, in accordance with the view we have taken. By the statute of the 27 Eliz. Ch. 4, all conveyances of land, &c. made with intent to defraud, &c. are declared to be void against subsequent purchasers " for money or other good consideration." [Dane's Ab. Ch. 109. Art. 9, Sec. 8; Roberts on Fraud. Con. 5, in note.] Under this statute it has been decided, that it is not material whether a subsequent purchaser has notice or not of a former fraudulent settlement; for it has been determined at law, and therefore must stand, that a man's having notice of a former settlement, which was fraudulent, shall not prevent his avoiding the same, as if he had been ignorant of it; because if he knew of the transaction, he knew it was void by law. (Dane's Ab. Ch. 109, Art. 9, Sec. 6. and cases there cited; Roberts on Fraud. Con. 16—39—44. 233, and cases there cited; 1 Story's Eq. 343, et post

and cases there cited; Cathcart et al. v. Robinson, 5 Peter's Rep. 264.)

But admitting that the defendant had no title to the slave, because he received the mortgage with a knowledge of the intestate's claim; yet if Abel at the time of his purchase had no notice of it, and practised no fraud on his vendor, his title was good, and the defendant having acquired all Abel's right, may invoke it in his defence.

The conclusions we have expressed upon the points considered, are opposed to several of the instructions given by the Circuit Judge to the jury, as will be readily seen by a reference to the statement of the case. Even supposing that the gift from James Peek to his son was complete, so as to vest a title in the latter, the possession of the father for more than three years without a *reservation or limitation of use or property made, proved, and recorded as the statute prescribes*, divests that title in favor of creditors and purchasers. Other questions are raised upon the record, but those examined, it is supposed, will lead to a decision of the cause upon its merits. Under this impression we have only to say, that the judgment is reversed and the cause remanded.