## NEWMAN v. JAMES & NEWMAN.

1. A conveyance of slaves by deed, to a married woman, "to her and her heirs, to have and to hold the same, to and for her use, benefit and right, and of the heirs aforesaid, without let, hindrance, or molestation, whatever," is a conveyance of the property to her sole and separate use.

2. When property is conveyed absolutely, to a married woman, by a stranger, the statute of frauds has no application, in a contest between the wife and the creditors of the husband; it is therefore unimportant, whether the instrument is, or is not recorded.

3. When a gift of slaves is made by deed, the delivery of the deed is sufficient, without a delivery of the property.

4. A denial by a defendant, upon information and belief, not founded on the personal knowledge of the defendant, will not overturn the positive testimony of one witness, sustaining the allegations of the bill.

Error to the Chancery Court of Monroe.

THE bill, which was filed by the plaintiff in error, alledges that one William Hollinger, on the 22d December, 1843, being the owner of certain slaves, by deed of that date, made a gift of them to her, for her sole and separate use, and intended so to express it in the deed, and so directed the deed to be drawn, but which was unskilfully drawn, and because the intentions of said Hollinger were not set forth, does not clearly express the intention of Hollinger, to give her a separate estate; and avers that no consideration passed from her husband to Hollinger, to induce him to make the gift.

That afterwards, on the 30th July, 1845, Hollinger having discovered the error, and mistake in the deed, and for the purpose of correcting it, made another deed of the property to her. Both deeds are made exhibits to the bill.

That at the spring term, 1844, Robert D. James recovered a judgment against Alger Newman, her husband, for $554 33 debt, and $406 93 damages, and on the 18th July, 1845, an alias execution issued on the judgment, was placed in the hands of the sheriff of Monroe—that he has levied on,

and advertised the property for sale, &c. The prayer of the bill is for a reformation of the first deed, for an injunction, &c.

James answered the bill, and denied that the slaves conveyed by the deeds ever were the property of Hollinger, but were the property of Newman—that the slaves were not in the possession of Hollinger at the time of the conveyance, and were never delivered to the complainant—and charges that the deeds are fraudulent and void in fact, and for want of registration.

For the testimony see the opinion of the court. The Chancellor dismissed the bill, which is the matter now assigned for error.

Leslie, for plaintiff in error.

A court of equity will correct a mistake in a deed, when it does not contain the true intent of the party making it. [1 Story on Eq. 128, § 115; Ib. 151, § 136.]

When property is given to a *feme covert* by deed, as "to and for her use, benefit, and right, without let, hindrance, or molestation whatever," it will be considered for her sole and separate use. [Clancy's Rights, &c. 262, 267; O'Neal, et al. v. Teague, 8 Ala. R. 345.]

The statute of frauds does not require a deed to a *feme covert* for her sole and separate use to be recorded, where the property goes into the possession of the donee. [Swift v. Fitzhugh, 9 Porter, 58; Thomas & Howard v. Davis, 6 Ala. Rep. 113; Catterlin v. Hardy, et al. 10 Ala. R. 511.]

Blount, contra.

1. Exhibit A., being a deed from William Hollinger to Elizabeth Newman is void for want of registration. [Myers v. Peek's Adm'rs, 2 Ala. R. 648; Statute of Frauds, Clay's Dig. 254.

2. It is void because intended to hinder and delay creditors —it was intended to prevent the defendant from collecting his debt sued for on 2d January, 1842; the *deed bears date*

22d December, 1843, nearly two years afterwards. [Myers v. Peek's Adm'rs, 2 Ala. 648.]

3. There was no delivery of the property or of the deed to the complainant—it is indispensable to the validity of a gift *inter vivos*, there should be a delivery of the property accompanying the gift. [Sewell v. Glidden, 1 Ala. Rep. 52; Oden v. Stubblefield, 4 Ib. 40.]

4. Whatley, one of the witnesses of complainant shows that Alger Newman has always been in the possession of the negroes. Peebles, the only other witness, has known Hollinger for eighteen years, and has never seen said slaves in Hollinger's possession. The answer avers that the negroes have always been in Newman's possession.

5. The exhibit B. conveying a sole and separate estate to complainant, is fraudulent and void as to defendant's debt—the alias execution created a lien upon the property on 18th July, 1845, and exhibit B. bears date 30th July, 1845.

6. If it was not Hollinger's property, it is a matter of no consequence whose property it was—so far as Mrs. Newman is concerned. The levy of the defendant's execution on the slaves, as the property of Newman, is good until a better title is shown.

7. The complainant has entirely failed in proving property, or possession, in Hollinger at the time of the execution of the deed A., or at any subsequent time—but her witnesses have proved the property in the possession of Alger Newman.

ORMOND, J.—The first deed made by Hollinger, conveys the slaves, and other property, to Mrs. Newman, " to her and her heirs, to have and to hold the same, to and for her use, benefit, and right, and of the heirs aforesaid, without let, hindrance, or molestation whatever." In our judgment, these words clearly indicate the intention, to create a separate estate in the wife. The most appropriate language to employ, in the creation of such an estate, is " to her sole and separate use ;" these have an established technical meaning, indicating with legal certainty, the character of the es-

tate intended to be created. But it is well settled, that no particular phraseology is necessary; it is sufficient, if it appear manifestly that the intent was to secure it to the use of the wife, in such a mode as to be inconsistent with the enjoyment of the gift by the husband, or with the exercise of dominion over it by him.

Thus it has been held, that a gift to trustees, for a married woman, to which was added, "my said trustees shall not be troubled to see to the application of any sum, or sums, paid to the said Sophia, but her receipt in writing shall be sufficient," were held to be sufficient, to indicate an intent to create a separate estate in the wife. So in Hartley v. Hurle, a direction to pay a legacy "into the proper hands" of a married woman, was held to give her a separate estate. [5 Ves. 541.] Many other cases might be cited, some of which appear to be of doubtful authority, but the clear result of the authorities is, that when it is evident from the language employed in the creation of the estate, that the husband should not enjoy the property, or exercise any dominion over it, his marital rights are excluded, and the wife will take a separate estate. It is declared to be for her use, benefit, and right, and although these words standing alone, might not be sufficient, yet when it is added, she was to hold this property, "without let, hindrance, or molestation whatever," it is impossible, we think, to doubt the intention was, that the husband should exercise no control, or dominion over it. To permit him, or a creditor in his name, to appropriate it to the payment of the husband's debts, would be in direct contravention of the deed. In our judgment it is a much clearer case of the creation of a separate estate, than either of those cited. [Clancey on Rights, 267; Ex parte Ray, 1 Madd. C. 199, Am. ed. 115.]

This renders it unnecessary to consider, the question, whether the case presented is one requiring the deed to be reformed, so as to make it speak the intent of the donor.

We do not perceive, that the 2d section of the statute of frauds, requiring conveyances of personal property to be recorded, unless the possession remains with the donee, has any application to this case. The design of the statute was, to subject the property in such a case, to the payment of the debts of the donor, and doubtless in this case, if the posses-

sion of the property was retained by the donor, without registration it would be liable to the payment of his debts, or in the language of the act, would be taken to be fraudulent. But that is not the predicament of the case. The attempt is, to make the slaves responsible for the debts of the husband of the donee. The case of Myers v. Peek, 2 Ala. 655, was determined upon the last clause of the 2d section of the statute, requiring the registration of deeds, where a loan had been made, or a reservation, or limitation retained by the grantor, the possession being with the loanee, or grantee, and has no bearing upon such a case as the present. See, also, Oden v. Stubblefield, 4 Id. 40, and Thomas & Howard v. Davis, 6 Id. 121. It is manifest, these decisions have no application here. This is not the case of a loan, or reservation of an interest by the donor, but is an absolute gift to a married woman, and the statute of frauds has no application, in a contest between the wife and the creditors of the husband. [Swift v. Fitzhugh, 9 Porter, 39, and O'Neil, Michaux, &c. v. Teague, 8 Ala. 349.]

If the slaves conveyed by this deed to Mrs. Newman, belonged to Hollinger at the time the deed was made, it was a valid conveyance, although there was no delivery of the slaves to her. An actual delivery is necessary to the consummation of a pure gift at common law, but where the gift is manifested by deed, the delivery of the deed is an equivalent act, and consummates the gift. [McCutchen v. McCutchen, 9 Porter, 650.] It is supposed there is no proof the first deed was delivered. The fact of delivery is usually inferred from circumstances, and is in this case conclusively established, although the donee was not present at the execution of the deed. The donor himself admits the full execution of the deed, and that it is binding on him, and we are unable to perceive, what interest any one who does not claim through him, as creditor, or purchaser, has in controverting this fact. If the deed is void for want of a delivery to the donee, the creditors of the husband of the donee can claim no benefit from it, for the result would be, that the property is still in Hollinger, the donor. And this brings us to what is really the only question of any difficulty presented by the

record—were these slaves, at the time of the conveyance, the property of Hollinger, or were they, as contended, the property of Alger Newman, the husband.

This is a matter of fact, to be determined from the evidence, and involves the question of fraud. The donor has been examined as a witness, and he proves, that the slaves belonged to him, when he conveyed them to the wife of Newman. He states, that the slaves once belonged to Newman, but that he purchased them at Monroeville, at sheriff's sale. That Newman is an improvident man, and he conveyed them to Mrs. Newman, from considerations of blood, and affection, she being his cousin, and a cripple, and both being of the Creek tribe of Indians. That at the time of the conveyance, the slaves were not present, being on his plantation. That Newman, for six or seven years previously, had the charge of all his slaves, but at the time of the conveyance was out of the State.

The defendant examined no witnesses, and it is evident if this witness is believed, the slaves were his, and he had the right to give them to whoever he pleased. There can be no doubt of his competency, as he has no legal interest in the question. Nor do we see any thing in the fact, that it was a donation, which should discredit his testimony. It appears from the testimony of the other witnesses, that he is wealthy, and that he was expected to die on the day the deed was executed; that he declared he had long meditated making this conveyance, and that it had been delayed too long.

We do not see any material variance between this testimony and the evidence of Whatley. The latter states, he does not know to whom the slaves belonged at the time of the conveyance, except the boy Ben, who was purchased by Hollinger of the witness, in 1840, and to whom he executed a bill of sale—when he first knew the slaves they were in the possession of Newman, but whether they were in fact in his possession, or merely under his control as the overseer of Hollinger, he does not know.

We do not think the omission of Hollinger to state that he purchased the boy Ben from Whatley, impugns his veracity. No conceivable motive could exist for the suppression of this

fact ; and the general statement, that he purchased the slaves at a sheriff's sale of Newman's property, may reasonably be referred to the five other slaves, Milley and her children, as he might well suppose, his right to Ben, who never had belonged to Newman, would not be controverted.

As to the proof by Whatly, of the possession of the slaves by Newman, it is too indefinite to be of much value as evidence. He may refer to a period anterior to the sheriff's sale, and if he speaks of a subsequent time, he admits he does not know, whether Newman asserted title, or whether his apparent possession was any thing more than the control of an overseer. Be its effect however what it may, it is certainly not inconsistent with the testimony of Hollinger. There is indeed, no testimony establishing that Newman was ever in possession of these slaves, since the date of the deed ; but if that fact were incontestably proved, it would not be inconsistent with his wife's right of property, unless possibly he was separated from his wife, and asserted a title adverse to the deed, under which she claimed title. [Lee v. Mathews, 10 Ala. 686.]

It will be seen, that the entire merits of the case turns upon the testimony of Hollinger, and in our judgment there is nothing in the testimony itself, or in the attending circumstances, calculated to show that it is not entitled to full credence. The principal fact, the purchase of the slaves, is stated to have been open, and notorious, and if it was fabricated, it is impossible to suppose it would not have been shown to be false. Nor is there any reason whatever for supposing that the purchase was made with Newman's money. The answer in reference to the *bona fides* of the transaction, is made upon information, and belief, and does not profess in its denials to be founded on the personal knowledge of the defendant—proof therefore by one witness of the facts, is sufficient, the more especially as the fact is not a secret transaction, but one which was public, and must have been generally known.

Our judgment therefore is, that the Chancellor erred in his decree dismissing the bill. The decree rendered by the

Chancellor must be reversed, and one be here entered, enjoining the respondent from collecting his judgment out of the slaves mentioned in the deed of the 22d December, 1843.