# Ohmer *v.* Boyer.

*Bill in Equity for Removal of Administration, and Sale
of Lands for Equitable Division among Tenants in
Common.*

1. *Consideration of deed, and parol evidence affecting.*—A recited pay-
ment of $100, besides natural love and affection, as the consideration
of a deed executed by the husband in trust for the wife, conveying
property worth about $12,000, is only a nominal consideration; but it
estops the husband or his heirs, in a controversy with the wife or her
devisees, from alleging that the deed was merely voluntary; and while
parol evidence may be received to show that less than $100 was paid,
it is not admissible to show that nothing was in fact paid, thereby
changing the character of the instrument.

2. *Subrogation, or equitable assignment of mortgage, on payment by
assignee of equity of redemption.*—Lands being conveyed by the hus-
band, on a nominal consideration, besides love and affection, in trust
for the wife for life, with remainder in one-half to the heirs or devisees of
each of them respectively, and the lands being at the time subject to
an outstanding mortgage executed by the husband; the wife has a right
to pay off and discharge the mortgage, for her own benefit and protec-
tion, either before or after her husband's death; and such payment be-
ing made by her after his death, by allowing the mortgagee to retain
and appropriate the rents, she is entitled, as against the heirs of the
husband, or any one claiming under him, to be subrogated to the rights
of the mortgagee, or to stand as an equitable assignee of the mortgage.

3. *Same; interest on mortgage debt, as between tenant for life and re-
mainder-man.*—The wife (or widow) being tenant for life of the prop-
erty, under such deed, was bound, as against the remainder-man, to
keep down the accruing interest on the mortgage debt, and no interest
could be allowed during her life; but, after her death, on bill for sale
or partition between her devisees and the husband's heirs, interest on

18

[Ohmer v. Boyer.]

the principal paid is to be apportioned according to their respective interests as remainder-men.

4. *Limitation of foreclosure of mortgage, or enforcement by equitable assignee.*—The foreclosure or enforcement of a mortgage is not barred by lapse of time less than twenty years, in the absence of an actual adverse possession by the mortgagor, or those claiming under him, brought home to the knowledge of the mortgagee; and the same limitation applies to an equitable assignee, who, having paid the debt, seeks to be subrogated to the rights of the mortgagee, as against the heirs of the mortgagor.

APPEAL from the City Court of Montgomery, in equity.

Heard before the Hon. THOS. M. ARRINGTON.

The bill in this case was filed on the 28th June, 1888, by Mrs. Maggie Boyer, claiming as sole heir at law of Joseph Bihler, deceased, against Johannes Ohmer and others, devisees under the will of Mrs. Theresa Bihler, deceased, who was the wife and widow of said Joseph Bihler; and sought to remove the administration and settlement of Mrs. Bihler's estate into the Chancery Court, and to have certain real estate in Montgomery sold under the decree of the court, for the purpose of equitable division, or partition, between the complainant and the defendants as tenants in common. The real estate, which was situated in the city of Montgomery, was conveyed by Joseph Bihler, by deed dated March 10th, 1870, to S. Schuessler as trustee, in trust for the use and benefit of Mrs. Theresa Bihler for life, with limitations over, as copied in the opinion of the court. The consideration recited in the deed was the payment of $100 in cash, the receipt of which was acknowledged, and the grantor's love and affection for his wife; and the evidence in the case showed that the property was then worth about $12,000. At the time this deed was executed, the property was incumbered with a mortgage to the Montgomery Mutual Building & Loan Association, executed by said Bihler and wife, for money borrowed by him as a stockholder in said corporation, which was to be paid by monthly installments as provided by the mortgage and the charter of the association. Joseph Bihler died in February, 1876, the mortgage being then outstanding and unsatisfied; and a bill for foreclosure being afterwards filed by the association, Mrs. Bihler allowed its agent to take possession, and receive and appropriate the rents, until the balance of the debt was paid. Mrs. Bihler died in December, 1886, having first executed her last will and testament, which was duly admitted to probate in March, 1887, and by which she bequeathed and devised all of her property to the defendants.

[Ohmer v. Boyer.]

The defendants demurred to the bill, on grounds not necessary to be stated; pleaded the statute of limitations of ten years, and claimed, both by answer and cross-bill, the right to be subrogated in the place of the mortgagee, as equitable assignee of the equity of redemption, to the amount of the payments made by Mrs. Bihler on the mortgage debt.

The City Court sustained the equity of the bill, as assailed by the demurrer, and, on final hearing on pleadings and proof, rendered a decree for the complainant as prayed, removing the administration of Mrs. Bihler's estate from the Probate Court, and ordering a sale of the land for equitable division; but he overruled the plea of the statute of limitation, or lapse of time, "and the claim to contribution and subrogation set up in the answer and cross-bill." The defendants appeal from this decree, and assign the latter part of it as error, with some rulings on evidence.

MOORE & FINLEY, for the appellants.—(1.) Under the deed of Joseph Bihler to Schuessler as trustee, Mrs. Bihler had an estate for life in the entire property, with contingent remainder to her heirs or devisees in one half of it; and on the death of her husband, this power of disposition vested in her an absolute estate in and to one half of the property, with at least an estate for life in, the other half. Holding then an absolute estate in at least one half the property, if no more, the rule as to the running of the statute of limitations, as between tenant for life and remainder-man, does not apply, and the cause of action was barred. (2.) In refusing the defendants' right of subrogation, or to stand as equitable assignees of the mortgage, to the extent of the amount paid by Mrs. Bihler in discharge of it, the decree violates the plainest principles of equity and justice.—6 Amer. & Eng. Ency. Law, 882; Tiedeman on Real Property, 42, § 66; *Stinson v. Anderson*, 99 Ill. 373; *Brown v. Frost*, 95 Ind. 248; *Livingston v. Newkirk*, 3 John. Ch. 312; *Mitchell v. Mitchell*, 27 Tenn. 358; *Williams v. Williams*, 22 Amer. Dec. 729.

JNO. GINDRAT WINTER, *contra*.—The deed to Schuessler as trustee, under which appellants claim, was voluntary, the recited payment of $100 being merely nominal when compared with the value of the property.—*Goodlett v. Hansell*, 66 Ala. 151; *Houston v. Blackman*, 66 Ala. 559; *Cox v. Cox*, 59 Ala. 591; *Murphy v. Br. Bank*, 16 Ala. 90; *Kinnebrew v. Kinnebrew*, 35 Ala. 628; *Crenshaw v. Jones*, 68 Ala. 420;

[Ohmer v. Boyer.]

2 Wash. Real Property, 653.   The deed being voluntary, no covenant of warranty would be implied, and an express covenant would not be binding, for want of consideration; nor would a court of equity decree specific perfomance of such an instrument.—*Moon v. Crowder*, 72 Ala. 79; *Goodlett v. Hansell*, 66 Ala. 151; *Hurst v. Thompson*, 73 Ala. 158; *Derrick v. Monette*, 73 Ala. 75; *Jenkins v. Harrison*, 66 Ala. 345; *Lewis v. B. & L. Asso.*, 70 Ala. 276.   And where the sale is without fraud or warranty, the vendee has no claim on the vendor for the money expended in discharging an incumbrance on the land.—*Jobe v. O'Brien*, 2 Hump. (Tenn.) 34; *Hooker's Appeal*, 4 Penn. St. 497.

Subrogation is an equitable doctrine, and does not, as a rule, depend upon contractual relations between the parties; and it usually applies when a common burden is lifted for the benefit of all, but never when it would be inequitable, or would work injustice.   In this case, the property was subject to the mortgage when conveyed by the grantor in trust for his wife.   He did not undertake to remove the incumbrance, for her benefit, nor was he under any legal obligation to do so; and if she removed it, it must have been for the protection of her own estate in the property.   By the terms of the deed, she took an estate for life in the entire property, with contingent remainder in fee to one half, if she survived her husband.   The trust did not continue beyond her death, if indeed it did not cease on the death of the husband. *Gosson v. Ladd*, 77 Ala. 223.   If Mr. Bihler had survived his wife, one half of the estate would have vested in fee in her heirs or devisees, and the other half would have reverted to him; but as of his original estate, the trust having terminated, and not as a purchaser under the deed; and on his death, intestate, his interest descended to the complainant, not as a purchaser under the deed, but as heir at law; while the appellants, claiming as devisees under the will of Mrs. Bihler, succeed only to her rights as a voluntary grantee, and can assert no rights which she could not have asserted against her husband as grantor.—2 Washb. Real Property, 441; 3 *Ib.* 27, § 36; *Ib.* 541, § 41; *Gillespie v. Hollingsworth*, 3 Md. 190; *Ellis v. Page*, 7 Cush. Mass. 161; *Robinson v. LeGrand & Co.*, 65 Ala. 111.

SOMERVILLE, J.—The bill was filed by the appellee, claiming an undivided half interest in the lands in controversy, as a tenant in common with the defendants, who are

alleged to own the other undivided half interest, in three shares of one sixth each. The complainant claims title as the niece and sole heir of Joseph Bihler, deceased, the original owner, who died in February, 1876. The defendants claim title through Theresa Bihler, the wife of Joseph Bihler, and as devisees under her last will, they being her brother and two sisters.

The title of Mrs. Bihler was derived from her husband, under a deed of trust executed by him to one Schuessler, and bearing date March 10th, 1870. This instrument conveyed to the wife *a life-estate* in the lands (then subject to a recorded mortgage, to which the deed made no allusion), with full rights to the rents, income and profits thereof, for her support and maintenance during her natural life, and thereupon as follows: that "said property shall, upon the death of said Theresa Bihler, should I then be living, enure to my own use and benefit; and should I then be dead, then the same shall be divided, and one half of the same shall enure to and belong to the devisees, and, in default of devisees, to the heirs at law of the said Theresa Bihler, and the remaining half shall enure and belong to the devisees, and, in default of devisees, to the heirs at law of me, the said Joseph Bihler." Inasmuch as the grantor in this deed died prior to his wife, Theresa, and she made a will leaving all her property, real and personal, to the defendants as her devisees, thus exercising the power of appointment conferred on her by her husband, no reasonable doubt can exist as to the proper construction of the deed, or the consequent *status* of the title. The defendants acquired, as tenants in common, an undivided half interest in the property, subject to the existing mortgage incumbrance, holding as devisees of Mrs. Bihler. The complainant took the other undivided half interest as sole heir of Joseph Bihler, he having made no will, subject only to the mortgage then existing on it.—Code, 1886, § 1829; *Gosson v. Ladd*, 77 Ala. 223.

The mortgage on the lands, above alluded to, was executed to the Montgomery Mutual Building Association, by Joseph Bihler and Mrs. Theresa Bihler, on April 30th, 1869, to secure a debt due by Joseph Bihler to the mortgagee, for $4,000. This imcumbrance, it is important to emphasize, *was prior to the deed of trust* under which Mrs. Bihler and her devisees claim, and, of course, superior to any claim on the part of the grantor's heirs, including the title of the complainant. The main point of contention in this case arises

from the payment of this incumbrance by Mrs. Bihler during her life-time, and the attempt of the defendants, by cross-bill in this suit, to set up the right of subrogation under it, by claiming the benefit of its equitable assignment.

The bill itself prays for the sale of the land, on the ground that it can not be equitably divided among the joint owners without such sale, which is now made the basis of chancery jurisdiction by statute.—Code, 1886, § 3262. It also prays for the removal of the administration of Mrs. Bihler's estate, from the Probate to the Chancery Court, for settlement. The chancellor adjudged the complainant to be entitled to the relief prayed, but disallowed the defendants' claim of subrogation under the mortgage.

There is no controversy about the fact, that the mortgage debt, to the extent of a remaining balance of something over $1,700, was paid by Mrs. Bihler, prior to, and in November, 1883. The mode of its payment was by surrendering possession of the premises to the agent of the mortgagee, who collected the rents accruing, and applied them to satisfaction of the mortgage debt. This was done under the compulsion of a foreclosure suit, in which a decree had been rendered by the Chancery Court in favor of the mortgagee.

It is insisted that there can be no just claim to subrogation, or, what is the same thing, to the benefit of the mortgage by way of equitable assignment, because the deed of trust conveying the life-estate to Mrs. Bihler was not based on a valuable consideration, but was a mere *deed of gift*, without covenants of warranty. We think there can be no doubt of the fact, that the only valuable consideration recited in the deed, additional to that of the good consideration of love and affection, is merely *nominal*, as compared with the real value of the property. The recital of a valuable consideration in a deed, although nominal, estops the grantor, and those holding under him, from alleging that it was executed without any consideration. Parol evidence is not admissible to qualify the extent of the title conferred, or to otherwise vary the legal effect of a deed, by attacking the consideration, even though nominal. In other words, the operation of the instrument, as to the interest or estate purporting to be conveyed, can not be affected by oral evidence of another or a different consideration.—*M. & M. R. R. Co. v. Wilkinson*, 72 Ala. 286; 3 Brick. Dig. 299, § 41; *Draper v. Shoot*, 69 Amer. Dec. 462. The recital of a nominal consideration has been held sufficient, as between the parties, to prevent a

resulting trust, and to confirm the title in the feoffee. *Jackson v. Cleveland*, 90 Amer. Dec. 266, note 270; Sanders on Uses and Trusts, 334–335. As forcibly observed by Cabell, J., in *Harvey v. Alexander*, 1 Rand. 219; 10 Amer. Dec. 519: "This is not the case of a deed purporting to be for a good consideration only. It is in express terms for valuable, as well as for good consideration. It is true that the valuable consideration is only one dollar. But one dollar, viewed as a consideration, is [between the parties] as much a valuable consideration as a million dollars." And we accordingly hold, that parol evidence is inadmissible, in the absence of fraud or mistake, to show in this case the falsity of the recital.—2 Pom. Eq. Jur. § 1035, note 1; *Squire v. Harder*, 1 Paige, 494. The evidence offered for this purpose should have been excluded. It was competent to show that a less sum than that recited was in fact paid, but not that nothing was paid, or that there was no consideration whatever for the deed, which was an executed, not an executory contract in any manner requiring the aid of a court of chancery to perfect the grantee's rights under it. A different rule would, of course, prevail, if the deed was assailed for fraud by a creditor of the grantor.—*Myers v. Peck*, 2 Ala. 648.

The rights of the parties to this suit must be governed by the rights of the respective parties under whom they claim; for an equity of this kind, once attaching, will follow the property in its various devolutions of title, in the hands of heirs, devisees, or even purchasers for value with notice. 3 Pom. Eq. Jur. § 1225. This being so, the only inquiry is, whether Mrs. Bihler could have claimed the benefit of the mortgage, as equitable assignee, against her husband's interest in the property, had she paid it during his life-time. She was a tenant for life in the mortgagor's equity of redemption, her husband, as owner, having conveyed to her such estate subsequent to the execution of the mortgage, with remainder of an undivided half interest to her heirs or devisees, with a reversion of the other half reserved to himself, and a contingent remainder to his own heirs or devisees, in the event of his death before the termination of the life-estate.

It seems to us that Mrs. Bihler had an undoubted *right to redeem* the property from the mortgagee, she being the assignee of the equity of redemption. Any person having a partial interest in the premises, and whose rights would be

[Ohmer v. Boyer.]

prejudiced by a foreclosure of a mortgage, has a right to re-
deem the mortgaged premises, by paying the entire debt.
This principle has been held to include persons having an
estate in land as tenants for life, as dowress, heirs, devisees,
grantee, and tenants in common.    It without doubt embraces
a tenant for life, whose estate is derived immediately from
the mortgagor, as in this case.—3 Pom. Eq. Jur. § 1220, and
note; *Butts v. Broughton*, 72 Ala. 294; Harris on Subroga-
tion, §§ 692–697.

Having the right to redeem, did she become the equitable
assignee of the mortgage, on the principle of subrogation,—
a doctrine which is not dependent on contract, but is the
creature of equity, designed for · the promotion of justice.
"The rule," says Mr. Pomeroy (2 Vol. Eq. Jur. § 729), "is
well settled, that when a *life-tenant*, or any other person
having a partial interest only in the inheritance, or in the
land, pays off a charge or incumbrance on the entire premises,
he is presumed to do so for his own benefit.    The lien is not
discharged, unless he intentionally release it.    He can always
keep the incumbrance alive for his own protection and reim-
bursement.    His intention to do so will be presumed, even
though he has taken no assignment.    In fact, his payment
constitutes him an equitable assignee."    And again:    "In
general," he observes, "when any person having a subsequent
interest in the premises, and who is not the principal debtor
primarily and absolutely liable for the mortgage debt, pays
off the mortgage, he thereby *becomes an equitable assignee*
thereof, and may keep alive and enforce the lien as far as
may be necessary in equity for his own benefit; *he is subro-
gated* to rights of the mortgagee, to the extent necessary for
his own equitable protection."—3 Pom. Eq. Jur. § 1212, and
note 2, and § 1221; 2 Pom. Eq. Jur. § 795; *Everson v.
McMullen*, 113 N. Y. 293; 10 Amer. St. Rep. 445; *Sanford
v. McLean*, 23 Amer. Dec. 773; *Averill v. Taylor*, 8 N. Y. 44.

There is no pretense that Mrs. Bihler became in any man-
ner liable personally for this mortgage debt, by reason of
being the transferree of the equity of redemption.    It was
her husband's debt, and not hers, so that she was under no
legal liability to pay it, primarily or otherwise—*Lovelace v.
Webb*, 62 Ala. 271; 3 Pom. Eq. Jur. § 1225.    Nor is any
question raised as to the rights of subsequent incumbrancers,
as in *Bolles v. Wade*, 4 N. J. Eq. 458, and *Denton v. Cole*,
30 *Ib*. 244, where the payment of a mortgage by the tenant
of the equity of redemption was held to enure to the benefit

of subsequent mortgagees. So, in *Conley v. Shelby*, 71 Ala. 122.

We can not see that the equities of the parties are at all changed by the fact that the deed to Mrs. Bihler, conferring her life-estate, was based on a nominal consideration. Even a mere donee of the equity of redemption, conferred in consideration of love and affection, has an undoubted right to redeem by paying the mortgage debt; and the right of equitable assignment, which is another name for subrogation, is an incident of the right of redemption.—*Cole v. Malcomb*, 66 N. Y. 363; Harris on Subrogation, § 718. A *fortiori* is this true, where the grantee of the mortgagor's interest is a purchaser, even though for a nominal consideration. By conveying to his wife the equity of redemption for life, Joseph Bihler armed her, as a necessary means of redemption, with the authority to pay the mortgage debt, which, we repeat, was his debt, not hers. A conveyance by deed from a mortgagor, with covenants of warranty, based on an adequate consideration, is not required in order to confer the right on a grantee to redeem from a prior mortgagee. The effect of a warranty deed would even extend further, and extinguish the mortgage debt and lien, even though it had been paid by the mortgagor with his own funds, and for his own benefit.—*Mickle v. Townsend*, 18 N. Y. 575.

Nor is it material that the mortgage debt was paid with the rents of the mortgaged property. As between Mrs. Bihler and her husband, the grantor-mortgagor, the rents were hers, and not his. And while it is true that they were subject to the lien of the mortgage, they were not more so than the land itself. In fact, the rents belonged to the life-tenant, until they were intercepted in some lawful mode by the mortgagee.—*Johnston v. Riddle*, 70 Ala. 219; Tiedeman on Real Prop. § 324. They belonged to her absolutely, as against all the world except the mortgagee, and the rents were a mere incident to the freehold. A payment of the mortgage debts with the rents, therefore, would confer the same right of subrogation to its benefit, as if it had been paid with her money derived from any other source. The fact of the ownership of the money, and not the source or mode of its acquirement, is the controlling factor in the transaction.

It follows from these principles, that the chancellor erred in not granting the relief prayed by the defendants' cross-bill, so far as to subrogate them to the rights of Mrs. Bihler

[Ohmer v. Boyer.]

as the equitable assignee of the mortgage, to the extent of the balance paid by her during her life-time. In other respects, the decree seems to be free from error.

It will become necessary to remand the cause for the taking of an account by the register, in connection with the settlement of the administration of Mrs. Bihler's estate.

The inquiry will be as to what ratio of the mortgage debt shall be apportioned among the different parties to the suit, as their several ratable shares. The rule in such cases is, to compel the life-tenant to pay the annual interest on the mortgage debt during his or her life-time. Being under obligation to keep down the interest, the life-tenant is not entitled to any contribution from the remainder-men, or reversioners, for payments made as interest.—3 Pom. Eq. Jur. § 1223; Tiedeman on Real Prop. § 66.

For so much of the payment made by Mrs. Bihler as covered accumulated interest, if any, no credit can be allowed to the defendants. Nor should any interest be allowed on the principal up to the time of Mrs. Bihler's death, which occurred December 29th, 1886. From that day, however, the interest commenced to run, and is allowable as the legitimate fruit of the principal. The amount thus accruing must be charged against the reversioners, or remainder-men, in the ratio of their shares owned in the common property. This would operate to apportion one-half of this sum to the complainant, and the other half equally against the several defendants—or one-sixth part to each.

It is manifest that the statute of limitations is no bar to the defendants' claim of subrogation under this mortgage. This claim, as we have said, is based on the sole fact that the defendants, who stand in the shoes of their testatrix, have become the equitable assignees of the mortgage security. Against the enforcement of a mortgage, no period of time will avail as a bar less than twenty years, in the absence of an actual possession by the mortgagor, or those claiming under him, adverse to the mortgagee, and brought home to his knowledge.—3 Brick. Dig. 622, § 303. And an equitable assignee has the same period of time in which to assert his claim in a court of equity, as his assignor had, unless some special circumstances of the case call his diligence into extraordinary activity, so as to charge him with *laches.*

The decree of the chancellor will be reversed, and the cause will be remanded, that a decree may be rendered in

[Gafford v. Strauss.]

accordance with the foregoing opinion, and the requisite orders made for the settlement of the administration of Mrs. Bihler's estate.