(Superior Court of Cincinnati.)

### THE EQUITABLE NATIONAL BANK v. ELIZABETH A. MORRISON.

---

In a separate instrument which recited that it was executed in consideration of one dollar and other valuable consideration paid to it by a bank, M. agreed with the bank that she would guarantee the payee of the L. Co., a foreign corporation, to a certain amount. The instrument having been delivered to the bank it loaned the L. Co. upon its note the sum of $5,000.00, which amount was less than the amount stipulated for in the guaranty. The note not having been paid at its maturity and M. having been notified of such default, requested the bank to bring suit forthwith against the L. C. The bank did not bring suit as requested. Subsequently the L. Co. became insolvent and was wound up by the courts through a receiver.

Held: That sec. 5833, of the Rev. Stat., which provides that in certain cases then enumerated, when a surety requests a creditor to bring suit against the principal and he fails to do so, the surety is released does not apply to this case.

---

### SMITH, J.

The Lytle Safe & Lock Company was a foreign corporation doing business in this state, and was a borrower from the Equitable National Bank of this city. Being desirous of securing further loans from the bank, and for the purpose of enabling it to accomplish this purpose, on or about the 23d day of December, 1893, it secured from the defendant, Elizabeth A. Morrison, the guaranty hereinafter set forth, and delivered the same to the Equitable National Bank, which subsequently, on the same day, discounted the four months' note of the Lytle Safe & Lock Company for $10,000. This note not being paid at maturity on April 26, 1894, it was taken up on said date by two notes of $5,000 each, one running for ninety days and the other for four months. On August 29, 1894, the date of the maturity of the latter note it was not paid, and notice of such non-payment was immediately given by the bank to Mrs. Morrison, who, on September 1, 1894, through her son, acting as her agent, gave notice to the bank to commence an action on said note forthwith against the Lytle Safe & Lock Company. The bank did not commence such action, and on September 30, 1894, the Lytle Safe & Lock Company passed into the hands of a receiver, who was appointed by this court. The amount received by the bank from the receiver from the winding up of the safe company was $900, and after crediting this amount upon the $5,000 note, the bank has instituted this action against Elizabeth A. Morrison on her guaranty of April 3, 1893, to recover the

balance due on said note, together with interest on the same.

The guaranty of December 23, 1893, is as follows:

"Cincinnati, Dec. 23, 1893.

"In consideration of the sum of one dollar and of other good and valuable considerations paid to me by the Equitable National Bank of Cincinnati, Ohio, the receipt whereof is hereby acknowledged, I do hereby guarantee the payment of any note or notes which said The Equitable National Bank, may discount for and on behalf of the Lytle Safe & Lock Company within the next two years from the date hereof. This guarantee, however, is not to apply to any sum exceeding five thousand dollars, but need not necessarily apply to any sum the payment of which is already guaranteed to said bank by Mrs. Florida A. Price or any other person, it being my intention herein to guarantee the payment of any notes of the said The Lytle Safe & Lock Company not exceeding in amount the sum of $5,000, which said bank may discount the selection of the notes hereby guaranteed to be entirely at the option of said bank, and it is not to be understood that the validity of this guarantee is dependent upon condition that said bank shall not discount notes exceeding the amount of $5,000, but may discount the notes of said company in any amount they may see fit, and this guarantee is entirely without reference to any other guarantee which said bank may hold as to any notes discounted for said The Lytle Safe & Lock Company.

'And I do hereby waive demand and notice of protest of any of the notes hereby guaranteed.'

"Witness my hand this 23d day of December, 1893.

"(Signed) Elizabeth A. Morrison."

The note of April 26th, 1894, for four months time is as follows:

"$5,000                Cincinnati, Ohio,
                        "Apl. 26, 1894.

"Four months after date we promise to pay to the order of Equitable National Bank $5,000, payable at Equitable National Bank. Value received.

                "The Lytle Safe & Lock Co.
                        "G. W. Evans,
                "Secretary and Treasurer
"No--. Due August 29.

The notice sent by the bank to Mrs. Morrison notifying her that the note had not been paid is as follows:

"Cincinnati, Aug. 29, 1894.
"Mrs. E. A. Morrison, Owen Cottage, Catawba Island, Ohio.

"Dear Madam: The note of the Lytle Safe & Lock Company for $5,000 due this day has not been paid, and unless you are willing to renew your guarantee, we shall be obliged to look to you for payment under guarantee now held by us.

Please advise us as to your wishes in this matter and oblige.

"Yours respectfully,

"J. M. Blair."

The notice from Mrs. Morrison to the bank directing them to commence an action forthwith against the company is as follows:

"Cincinnati, Sept. 1, 1894.

"To George Fisher, president; J. M. Blair, cashier, and the Board of Directors of the Equitable National Bank of Cincinnati, Ohio.

"Gentlemen: You are hereby notified to commence an action forthwith against the Lytle Safe & Lock Company, of Cincinnati, on a certain note for $5,000, due August 26-29, 1894, made by said company and discounted for said company by your bank, and on which you have alleged Mrs. Elizabeth A. Morrison to be liable as surety.

"Very truly yours,

"Elizabeth A. Morrison.

"By Wm. P. Morrison,

"Her agent in this behalf."

The main defense in this case is based upon the omission of the bank to commence an action against the Lytle Safe & Lock Company as requested by Mrs. Morrison on September 1, 1894.

The defense rests upon two grounds.

First. That under the statute of Ohio the bank, upon the receipt of such notice, was required to commence such an action within a reasonable time thereafter, and to proceed with due diligence to recover a judgment against the Safe & Lock Company and to collect the judgment by execution, and that for failing to so act the bank forfeited its right to recover from Mrs. Morrison; and

Second. That, irrespective of the statute, the bank was obliged under the rules of the common law (using the words common law in the broad sense of including both law and equity) to take the same course, and upon failure to do so to suffer the same forfeiture of right to recover from Mrs. Morrison.

The statute which it is contended by the defendant covers this case is designated in our statutes as section 5833, and reads as follows:

"A person bound as surety in a written instrument for the payment of money or other valuable thing, may, if a right of action accrue therein, require his creditor, by notice in writing, to commence an action on such instrument forthwith against the principal debtor; and unless the creditor commence such action within a reasonable time thereafter, and proceed with due diligence in the ordinary course of law to recover judgment against the principal debtor for the money or other valuable thing due thereby, and to make by execution the amount thereof, the creditor or the assignee of such instrument so failing to comply with the requisition of such surety shall thereby forfeit the right which he would otherwise have to demand and receive of such surety the amount due thereon."

It is beyond dispute that this section, by its express terms, only applies to a case where the surety appears upon the same instrument upon which the debtor is liable. For the statute says:

"A person bound as surety in a written instrument * * · * may require his creditor * * * to commence an action on such instrument."

Mrs. Morrison in this case is not liable upon the same instrument upon which her principal, The Lytle Safe & Lock Company, is liable—the company being liable upon its promissory note, and Mrs. Morrison being liable upon her guaranty in writing.

But it is contended that by force of section 4948 this section of the statute should be liberally construed so as to include a case where the surety did not appear upon the same instrument as the principal.

Section 4948 reads as follows:

"The provisions of this part and all proceedings under it shall be liberally construed in order to promote its object and assist the parties in obtaining justice; and the rule of the common law that statutes in derogation thereof must be strictly construed has no application to this part."

But there is a wide difference between a liberal construction of the language of a statute so that its language may be held to embrace those subjects and purposes which may fairly be said to fall within the spirit of the law, and a construction which is in direct conflict with the language of the law. The latter construction is never adopted if it can possibly be avoided.

An additional circumstance which is of no little weight in forcing the mind to a conclusion that section 5833 does not apply to this case is found in the fact that the separate instrument upon which Mrs. Morrison is liable is supported by a consideration quite independent even if it be conceded that it is in addition to the consideration which makes the principal liable to the creditor.

The consideration for the note is the money advanced by the bank to the Safe & Lock Company; but the written guaranty of Mrs. Morrison recites that it is made in consideration of one dollar; and when the guaranty was delivered to the bank the contract became binding on her; and while parol evidence would be admissible to show that this consideration was not received for the purpose of proving that it was still owing, no parol evidence would be admissible to show that it had not been received for the purpose of impeaching the validity of the contract.

The principle which forbids the introduction of parol evidence to contradict

a written instrument reciting a consideration for the purpose of impeaching the instrument is expressed by Brown on Parol Evidence, section 31, as follows:

"Parol evidence is admissible to show the real consideration and purpose although it contradicts the recital; and to contradict the acknowledgment of payment; but not to cut down the consideration except in an action to correct a mistake; *Nor to defeat the instrument.*"

See, also, Harvey v. Alexander, 1 Randolph (Va ), 233; Gully v. Grubbs, 1 J. J. Marsh, 387; Callaway v. Heam, 1 Houst. (Del.), 610; Goodspeed v. Fuller 46 Me., 141; Ohmer v. Bayer, 89 Ala., 273; Perry v. the C. S. R. R. Co., 5 Caldwell's Report, 45 Tenn., 138. 143; Kimball v. Walker, 30 Ill., 482; Ocheltree v. McClung, 7 W. Va., 232; Solomon v. Turner, 1 Starkie, 51; Langdell's Summary of the law of Contracts, section 55.

The guaranty of Mrs. Morrison being sustained by a consideration independent of that which sustains the note, and being upon a different instrument from that upon which the principal is liable, to hold, that section 5833 applies to such a case would be to hold that every case of guaranty fell within the operation of this statute.

I can not think so liberal a construction of the statute as this would correctly express the meaning of the legislature. I come then to inquire whether, aside from the statute, there has been any such failure of duty upon the part of the creditor in not obeying the request of Mrs. Morrison as affects a release of her obligation.

In 1 Brandt on Suretyship and Guaranty, sections 238, 239, it is stated that

"It is settled by a long continued and unvarying current of authorities that the surety may, by a suit in chancery, after the debt becomes due and before he pays it compel the creditor to proceed to collect the debt from the principal provided he indemnify the creditor against loss from a fruitless suit against the principal. * * * "As to whether the surety may, without suit, accelerate the movement of the creditor against the principal there is great conflict of authority. There is a numerous and well considered class of authorities which hold that if, after the debt is due, the surety, verbally or in writing, request the creditor to sue the principal who is then solvent, and the creditor fails to do so, and the principal afterwards becomes insolvent, the surety is thereby discharged. The reasoning upon which these decisions are founded is that equity will compel the creditor to sue the principal and take the money from him; because he is primarily liable for it, and it is the duty of the creditor to get payment from him if possible. If it is his duty to do this, there is no reason why he should not be compelled to do it upon the request of the

surety *in pais*, as well as by filing a bill in chancery against him. * * *

"In order that the request may have this effect, the principal must at the time thereof be insolvent and able to pay all his debts, according to the ordinary usage of trade."

But in section 242 of the same work the author states the above rule not to be sustained by the weight of authority, and declares that:

"The great majority of cases on the subject hold, in the absence of any statutory provision, that if after the debt is due the surety request the creditor to sue the principal, who is then solvent, and the creditor fails to do so, and the principal afterwards becomes insolvent, the surety is not thereby discharged.

"The ground upon which these decisions rest is that the principal and surety are both equally bound to the creditor, who may have taken a surety in order that he might not have to sue the principal. If the surety desires a suit brought against the principal, he may himself pay the debt and immediately sue the principal. The contrary doctrine is an innovation, and was unknown to the common law."

So far as I am advised this question has never been directly presented to our supreme court, and I must adopt the rule sustained by the weight of authority unless the reasons in support of the other rule appear to have the greater force. On the contrary, the reasons in support of the rule adopted by the majority of the cases seem to me to have the greater force. The contract of the surety is to pay the debt of his principal, if when due it is not paid by the principal—not to pay it if the creditor can not collect it by an action. Why, then, should the surety be given the right to compel the creditor to go through a possibly protracted law suit, with the attendant costs, before the creditor can collect the debt from the surety? Is not this imposing an obligation upon the creditor which his contract does not impose? And it may be asked with great force why should the creditor be compelled to bear the burden of the litigation with the principal when our statutes have given to the surety the same right to sue the principal and to have the benefit of any of the provisional remedies that the creditor has? Sections 5845, 5846 and 5847.

This conclusion is also in harmony with the principle now well established in this state that a mere delay to pursue remedies, or an omission to enforce liens by the creditor will not release the surety. Farmers' Bank of Canton v. Reynolds, 13 Ohio, 104.

But if the rule adopted by the minority of the cases be accepted as the true one, it is extremely doubtful whether it has any application here, for the reason that the rule requires that in order that the

request of the surety upon the creditor to sue shall have the effect of releasing the surety, the principal must be shown to have been solvent at the time of the request and able to pay his debts, according to the ordinary usage of trade, and that the principal afterwards became insolvent. In this case the evidence shows that at the time the request was made the principal was insolvent, and continued to remain in that condition. The element which makes the inapplicability of the rule doubtful arises from the fact that on account of non-residence an attachment might have been issued against the principal by the creditors, but I am not advised that the authorities which adopt the minority rule make that circumstance the equivalent of solvency.

In the discussion of the questions involved I have not found it necessary to determine whether a guarantor may be regarded as a surety within the meaning of section 5383, because even if it be conceded that such is the proper construction of the statute, I find that the defendant is not entitled to the benefit of the statute.

For the reasons above stated I am of the opinion that the plaintiff is entitled to a judgment for the full amount claimed.

John R. Sayler, for plaintiff.
Edward Colston, for defendant.