(Judge Laubie of the Seventh Circuit sitting in the place of Judge Winch.)

DORR E. WARNER, ADMR., v. ALICE M. YORK ET AL.

1. PROBATE COURT'S ORDER MAY BE BASIS FOR ACTION IN NATURE OF CREDITOR'S BILL.

An action in the nature of a creditor's bill is properly based on an order of a probate court, upon the settlement of an administrator's accounts, to the administrator for the payment of money, because it is provided in Sec. 544 Rev. Stat. that orders for the payment of money made by a probate court may be enforced by execution or otherwise as provided for the enforcement of judgments of courts of common pleas, and Sec. 5464 Rev. Stat. provides that judgments of courts of common pleas may be enforced by an action in the nature of a creditor's bill.

2. MORTGAGOR SUBROGATED TO MORTGAGEE'S RIGHTS BY PAYING MORTGAGE DEBT.

Where mortgaged property has been conveyed, and subsequently the mortgagor pays all or a part of the mortgage debt, the payment of which was in terms assumed by the grantee of the mortgagor, the mortgagor is subrogated to the rights of the mortgagee in the mortgage to the extent of such payments, and he thereby acquires an equitable interest in the mortgaged property

3. EQUITABLE AND LIFE ESTATES NOT MERGED UPON PAYMENT OF MORTGAGE DEBT, WHEN.

Merger of an equitable estate with a life interest in the same property will not be held to arise on account of payments upon a mortgage debt thereon by the holder of the equitable interest therein where it is to his interest to keep the mortgage alive.

4. EQUITABLE INTEREST IN LAND CANNOT BE ATTACHED NOR SUBJECTED TO JUDGMENT LIEN.

As Sec. 5528 Rev. Stat., which provides for the execution of an order of attachment, authorizes the levying of an attachment upon lands and tenements only, a mere equitable interest in land cannot be attached; nor can a judgment against the holder of such an interest create a lien upon that interest as against the land, because the lien of a judgment, under the provisions of Secs. 5374 and 5375 Rev. Stat., is upon lands and tenements only.

APPEAL from common pleas.

O. C. Pinney and A. A. Stearns, for plaintiff in error.

Where maker of a note secured by a mortgage was joint owner of the property covered by the mortgage, and transferred the land to the reversioners subject to mortgage, the reversioners thereby became principal debtors, and the maker thereby was placed in the situation of a surety, and subrogated to the rights of the mortgagee upon payment. Johnson v. Zink, 51 N. Y. 333; Marsh v. Pike, 19 Paige Ch. 595; Ayers v. Dixon, 78 N. Y. 318; Orrick v. Durham, 79 Mo. 174; Brown v. Kirk, 20 Mo. App. 525.

The extension of time by the mortgagee to the grantee of land taken subject to mortgage, without the consent of the mortgagor, will discharge the latter, since the mortgagor under these circumstances is deemed in the situation of a surety merely. George v. Andrews, 60 Md. 26 [45 Am. Rep. 706]; Calvo v. Davies, 73 N. Y. 211; Spencer v. Spencer, 95 N. Y. 353; Ellis v. Johnson, 96 Ind. 377, 383; Union Mut. Life Ins. Co. v. Hanford, 143 U. S. 187 [12 Sup. Ct. Rep. 437].

Any person having a partial interest in the premises, and whose rights would be prejudiced by the foreclosure of a mortgage, has a right to redeem the mortgaged premises. This rule, without doubt, embraces a tenant for life. Ohmer v. Boyer, 89 Ala. 273 [7 So. Rep. 663]; Crawford v. Carver, 16 Phila. 53; Peck v. Glass, 7 Miss. (6 How.) 195; Twombly v. Cassidy, 82 N. Y. 155, 158.

The doctrine of subrogation is generally and most frequently applied where the person advancing money to pay the debt stands in the situation of a surety, or is only secondarily liable for the debt, but it is also applicable to cases where the party is compelled to pay the debt of a third person to protect his own rights, or to save his own property. The same rule is applied in those cases where the party paying is merely a tenant for years. Averill v. Taylor, 8 N. Y. (4 Seld.) 44, 51; Hamilton v. Dobbs, 19 N. J. Eq. 227.

In principle the position of defendant is exactly like the case of one who owns an unassigned right of dower. It is a right which can be

asserted, but until it is asserted amounts to merely an equitable interest in the land, and it is held that such a right is not a vested interest that can be reached by execution. Boltz v. Stolz, 41 Ohio St. 540.

In this case a judgment debtor became the purchaser of land at a judicial sale on June 5, but the deed was not executed and delivered to him until August 1. It was considered that the judgment debtor had an equitable interest in the land from the time of the purchase to the time he got his deed. A judgment creditor of the purchaser caused execution to be levied upon the land July 20. This was held not to create a lien upon the land as the equitable interest, resulting from the purchase at judicial sale, was not subject to levy. Gorrell v. Kelsey, 40 Ohio St. 117.

The liability of equitable interests in land, to be seized and sold upon execution as land, has never been recognized by this court, as existing either under the territorial or state governments. That it cannot now be seized and sold, is settled both by judicial determination and legislative enactment. Roads v. Symmes, 1 Ohio 281, 314 [13 Am. Dec. 621]; Baird v. Kirtland, 8 Ohio 21.

In Haynes v. Baker, 5 Ohio St. 253, 255, the court raises the question, which it does not decide, as to whether, when a person having an equitable interest, is in possession of the land, such interest may be sold on execution. It has never yet been decided in this state that such interest may be taken in execution, but the contrary has been held.

Reply to the brief of Mr. Hamilton.

Distinguished: National Bank v. Coal, Iron & Ry. Co. 62 Ohio St. 564 [57 N. E. Rep. 450].

Any vested interest in lands whether held by legal or equitable title may be attached and sold as upon execution to pay the debts of the owner. Wright v. Bank, 59 Ohio St. 80 [51 N. E. Rep. 876].

E. C. Schwan, John C. Hutchins and Sheldon Parks, for defendants in error.

MARVIN, J.

The facts in this case are as follows:

S. M. York and Alice M. York were husband and wife. On December 26, 1896, they were owners as tenants in common of a parcel of real estate in the city of Cleveland, which is worth about $12,500. On said date the said S. M. York and Alice M. York jointly executed their promissory note for the sum of $8,000, payable one year after its date with interest at six per cent., said note to draw interest at seven per cent. after its maturity. To secure the payment of this note the makers

of it at the same time executed a mortgage upon the premises herein-before named, which note and mortgage were delivered to the payee named in the note, and the mortgage was duly recorded. Said note and mortgage are now owned by the Colonial National Bank. After the execution of said mortgage the said S. M. York and Alice M. York exe-cuted a quitclaim deed of the same premises to one Gibbons, which deed contained a clause reading, so far as it is necessary for the understanding of this case:

"Said premises are conveyed to said grantee above named in trust for the benefit of said grantors and the survivor of them for life, and after their death to their children. * * * Power and authority is hereby conveyed and vested in said grantee above named to execute and deliver a deed in fee simple for said premises to said Standish M. York and Alice M. York for life, and in trust upon the terms and for the purpose above named."

(Standish M. York named in the deed is the same person as the S. M. York hereinbefore mentioned.) The defendants, Blanche York, Milton York and Alice S. M. York are the only children of S. M. York and Alice M. York.

Thereafter said Gibbons executed and delivered to said S. M. York and Alice M. York a quitclaim deed of the same premises, con-taining the following clause:

"This conveyance is made to said Standish M. York and Alice M. York and the survivor of them for life, and to them and the survivor of them the fee in trust for their children now born or hereafter born."

Both of these deeds were duly recorded.

In January, 1898, said S. M. York died, and the defendant, Alice M. York, was appointed administratrix with the will annexed of his estate. Thereafter and while acting as such administratrix she made various payments out of her own money upon the mortgage debt herein-before mentioned. The money from which these payments were made came to her upon policies of insurance upon her husband's life, she being the beneficiary named in said policies. The aggregate of the payments made by her was about $3,300. No other payments have ever been made upon said indebtedness.

On July 15, 1899, said Alice M. York was by the probate court re-moved from her administration, and the plaintiff in this action was ap-pointed to succeed her in said trust, and is still in the performance of his duties under such appointment.

Upon the settlement of the accounts of the said Alice M. York, of her administration, it was found by the probate court that there re-

mained in her hands as assets of said estate the sum of $23,381.07, and, on January 27, 1900, the probate court entered its order directing her to pay said amount to the plaintiff herein as administrator as aforesaid. This payment has not been made.

On November 27, 1899, the Wick Banking & Trust Company recovered a judgment in the court of common pleas of Cuyahoga county against said Alice M. York for $1,672.25.

On December 18, 1899, the American Surety Company commenced an action against said Alice M. York in the court of common pleas of Cuyahoga county, and on June 25, 1900, an order of attachment was issued in said last named action and levied on the premises hereinbefore named.

On August 3, 1900, the plaintiff filed his petition in this action, and on October 19, 1900, filed his amended petition herein, the same being the petition upon which this case is tried.

On October 25, 1900, execution was issued upon the judgment obtained by the Wick Banking & Trust Company, and this was levied upon the interest of said Alice M. York in the same premises. Ever since the execution of said mortgage the said Alice M. York has been in possession of said premises.

The petition of the plaintiff is in the nature of a creditor's bill, and sets out the order made by the probate court as hereinbefore mentioned, the execution and delivery of the mortgage now held by the Colonial National Bank and the execution and delivery of the quitclaim deeds hereinbefore mentioned, and prays that the interest of the said Alice M. York in said premises be subjected to the payment of the plaintiff's claim.

It is conceded by all the parties that the first lien upon these premises is the mortgage of the Colonial National Bank.

The plaintiff, the Wick Banking & Trust Company, and the American Surety Company each claim that Alice M. York, by the payment which she made upon the mortgage debt, became subrogated to the rights of the mortgagee to the extent of such payments.

The claim of Alice M. York and her children is that there was no subrogation, but that such payments extinguished the mortgage debt to that extent.

On the part of the Wick Banking & Trust Company it is further claimed that the life estate of the said Alice M. York is a legal estate and that its judgment operated as a lien upon such estate from the date of its recovery.

It is further suggested by said Wick Banking & Trust Company

that the estate which it claims that Alice M. York obtained in said premises by the payments made on the mortgage indebtedness was merged in the life estate, and that, therefore, its judgment is a lien upon all the estate which she has in these premises.

The American Surety Company claims that no part of the estate of Alice M. York in these premises is subject to any lien by reason of the judgment obtained by the Wick Banking & Trust Company, and that, in any event, only her life estate could be subject to any such lien, but that the estate which she obtained in the premises by her payments made upon the mortgage debt is an equitable estate only; that it is not subject to levy of execution, but is a proper subject of attachment and that its attachment creates a lien upon such estate from the date of the levy of such attachment.

The further claim of the plaintiff is that the estate which Alice M. York has in the premises, in any event, all the estate which she has other than her life estate is an equitable estate only, which is not subject to be levied upon either by execution or attachment.

It will thus be seen that the first question for consideration is, whether Mrs. York obtained any estate in these premises by her payments made upon the mortgage debt. If she did, was the estate so obtained by her merged in her life estate? If not, can such estate be reached either by the levy of execution, or attachment?

Before entering into a discussion of the questions already suggested, it should be said that we find that the order made by the probate court, upon the settlement of the accounts of Mrs. York, is a proper foundation for the bringing of the present suit. Section 544 Rev. Stat. provides that orders for the payment of money made by the probate court may be enforced by execution or otherwise as provided for the enforcement of judgments of the court of common pleas. Section 5464 Rev. Stat. provides that judgments in the court of common pleas may be enforced by action, such as the present case is.

Mrs. York is one of the makers of the note held by the Colonial National Bank, and is also one of the makers of the mortgage held by that bank as security for the payment of the note; and it is urged that whatever payments were made by her upon this indebtedness, were simply payments upon her own debt, and that she acquired no other interest in the mortgage, by making such payments, than the right to have the indebtedness reduced by the amount of such payments. This would, of course, be true if she were still the owner of the premises; it would not be true if the deed made by her and her husband had expressly provided that the mortgage debt should be paid by the grantee.

Authorities are numerous, that where a grantor pays all or a part of a mortgage debt the payment of which is in terms assumed by the grantee of the mortgagor, such mortgagor is subrogated to the rights of the mortgagee in the mortgage to the extent of such payments. Sheldon, Subrogation Sec. 3; Kinnear v. Lowell, 34 Me. 299; Henson v. Reed, 71 Tex. 726 [10 S. W. Rep. 522]; Baker v. Terrell, 8 Minn. 195.

In this case, it is said in the syllabus:

"A mortgagor who conveys the land subject to the mortgage and who afterward, even voluntarily, pays the mortgage debt, is entitled to be subrogated to the rights of the mortgagee against the land."

Where the vendee of mortgaged premises assumes the payment of the mortgage debt, the relation between him and the mortgagor is that of principal and surety. Poe v. Dixon, 60 Ohio St. 124 [54 N. E. Rep. 86]; Sheldon, Subrogation Sec. 207; Johnson v. Zink, 51 N. Y. 333; Ohmer v. Boyer, 89 Ala. 273 [7 So. Rep. 663]; Averill v. Taylor, 8 N. Y. (4 Seld.) 44, 51.

A surety, being required to pay the debt of his principal, is subrogated to the rights of the creditor in any securities pledged for the payment of the debt. 24 Am. & Eng. Enc. Law (1 ed.) 197.

The authorities are not uniform, that where a mortgagee conveys to a grantee the mortgaged premises subject to the mortgage, that payments made by the mortgagor upon the mortgage debt entitle the mortgagor to be subrogated to the rights of the mortgagee, though the weight of authority, and, as we think, the better reason is in favor of such subrogation. The reasoning is, that the grant of premises subject to a mortgage constitutes a setting apart of the mortgaged property for the payment of the debt, and that, therefore, the mortgagor is entitled to have the property first subjected to the payment of such debt. It is true that the mortgagor is not relieved from liability upon the indebtedness, but, as between himself and the grantee, he is entitled to have the debt paid out of the avails of the mortgaged property, and, as is well said in the case of Baker v. Terrell, *supra:*

"Suppose, however, that the mortgagor, in order to avoid costs, and to save himself the inconvenience attending a threatened or actual litigation, should pay off or purchase the mortgage, why should he be in a worse condition, as regards the right to have the incumbrance charged upon the land, than he would be if forced by an action to pay? Are the undoubted equities which attend the one course wholly lost by pursuing the other? What difference can it make to the grantee of the land subject to the incumbrance, and why should he, in any possible contingency, get the benefit of any one's purchase of what was an acknowledged

charge upon his lands? * * * It is objected that in such cases the mortgagor, if he pays, is only cancelling a debt of his own. This is true in one sense, but yet the debt is one of which, as between him and a grantee who takes subject to the mortgage, the land is pledged to the payment, before calling on the mortgagor."

In the present case, the deed made by Mrs. York and her husband was a quitclaim deed which, in effect, is a deed of the premises subject to this mortgage and any other lien which existed upon the property. The grantee, by the terms of the deed, got only such interest as the mortgagor had, and the interest of the mortgagor was subject to this mortgage. It follows, that the interest which the grantee obtained by the deed was the premises subject to the mortgage, and if the grantor pays off the mortgage debt he must either be subrogated to the rights of the mortgagee or his payment must be held to be a gift to the grantee. In this case Mrs. York had an interest by reason of her life estate, which made it important for her that the mortgagee should not foreclose the mortgage; and she might very well have paid the mortgage debt or a part of it to avoid such foreclosure. By doing so, no wrong is perpetrated against the grantee, though she be subrogated to the rights of the mortgagee. The grantees still get just what their deed gave them,— the ownership of the premises subject to the life estate and the mortgage. Their rights are neither increased nor diminished by such payment of the mortgage debt. It is exactly equitable and just that the grantor, when paying, under the circumstances which existed in this case, should be subrogated to the rights of the mortgagee, and we hold that Mrs. York was so subrogated and thereby acquired an equitable interest in this property.

The question then follows: Did the equitable interest thus acquired by Mrs. York become merged in her life estate? Her life estate was a legal estate, she was in possession under it, and the general proposition is, where one who is the owner of a legal estate acquires an equitable interest in the same property, such equitable interest will be merged in the legal estate, and so the whole estate will be held by the legal title; but this rule is subject to exceptions. Where it is to the interest of one holding a life estate and who subsequently acquires an equitable estate in the same premises, that the latter should not merge in the former, it will be held that there is no merger, and one who has an interest in mortgaged premises, which premises are primarily liable for the payment of the mortgage debt, may, for his own protection, pay and be subrogated to the rights of the mortgagee, and the mortgage kept alive for his benefit. Sheldon, Subrogation Secs. 49, 50, 51 and 54.

In the last named section this language is used, under the heading:

"*Tests by which merger is determined.*—Nor is it necessary that the intent to keep the mortgage alive should have been manifested at the time of the payment otherwise than by taking an assignment of the security; unless there appears to have been an intention to extinguish it, it will be taken to be subsisting or extinguished, as the interest of the party may require. The merger of a charge in the inheritance will not be presumed, if this would be contrary to the interest of the owner of both the charge and the inheritance. The merger is prevented, and the charge or mortgage upheld, whenever there is a strong equity in favor of it, but never where it is not for an innocent purpose. If they are held in different rights, there will be no merger. When a charge on an estate becomes absolutely vested in the owner of the inheritance, the tests usually applied for ascertaining whether the charge has merged, are, *first,* whether there has been an actual expression of intention to that effect; *secondly,* whether the acts done by the owner of the estate are only consistent with the maintaining of the charge, and, *thirdly,* whether it is for the interest of the owner that the charge should not be merged in the inheritance."

Numerous authorities are cited in support of this language of the text. Indeed, the general doctrine is, that a merger will be held to arise only where it is to the interest of the holder of the legal estate that there should be a merger, and we hold, in this case, that there was no merger of the equitable estate held by Mrs. York on account of payments made by her upon the mortgage debt, with her life estate.

It is urged, however, that the attachment issued on June 25, 1900, in favor of the American Surety Company, and levied upon these premises, created a lien upon all the interest of Alice M. York, whether such interest be equitable or legal.

Section 5524 Rev. Stat. provides that:

"The order of attachment shall be directed and delivered to the sheriff, and shall require him to attach the lands, tenements, goods, chattels, stocks, or interest in stocks, rights, credits, money, and effects of the defendant in his county, not exempt by law from being applied to the payment of plaintiff's claim, or so much thereof as will satisfy the plaintiff's claim."

Section 5528 Rev. Stat. provides that:

"The sheriff shall execute the order of attachment without delay; he shall go to the place where the defendant's property is, and there, in the presence of two freeholders of the county, declare that, by virtue of the order, he attaches the property at the suit of the plaintiff."

We know of no case where it has been held that an equitable estate in lands can be reached by the levying of attachment. The statutes authorize the attachment to be levied upon the lands and tenements of the defendant. Surely the interest in these premises which Mrs. York acquired by the payments made by her upon the mortgage debt did not make her the owner of any lands or tenements, and we hold, therefore, that the American Surety Company secured no lien upon this equity of Mrs. York by virtue of its attachment. During the pendency of this suit the surety company has obtained a judgment in the action in which the attachment was issued.

On behalf of the Wick Banking & Trust Company, it is urged that its judgment, recovered on November 27, 1899, created a lien in its favor upon Mrs. York equitable interest in these premises.

Section 5374 Rev. Stat. provides that:

"Lands and tenements, including vested interests therein, and permanent leasehold estates renewable forever, * * * shall be subject to the payment of debts, and shall be liable to be taken on execution and sold as hereinafter provided."

Section 5375 Rev. Stat. provides that:

"Such lands and tenements, within the county where the judgment is entered, shall be bound for the satisfaction thereof from the first day of the term at which judgment is rendered;" * * *

What has been said in reference to the statutes as to the effect of an attachment upon the interest of Mrs. York in these premises is equally applicable to this claim of the Wick Banking & Trust Company, and we hold that since the equitable interest of Mrs. York in these premises did not constitute them the lands or tenements of Mrs. York, the judgment constituted no lien upon them as against such interest. The execution upon the judgment, having been levied after the bringing of this action, is inferior to the rights of the plaintiff herein.

From what has been said, it follows that the only creditor who has acquired any interest in the equitable estate of Mrs. York in these premises is the plaintiff.

Mrs. York, being a widow, is entitled to exemptions to the amount of $500, in lieu of a homestead.

The order of the court therefore is, that unless Alice M. York shall within ten days after the entering of this decree pay to the Colonial National Bank the amount still due upon its mortgage debt, and pay to the plaintiff herein the difference between the amount so paid to the Colonial National Bank and the amount which would now be due upon the mortgage debt if she had made no payment thereon; and to pay to the Wick

Banking & Trust Company the amount due upon its judgment; and pay to the American Surety Company the amount due upon its judgment; and pay the costs of this action; said premises shall be appraised, advertised, and sold by the sheriff of this county as upon execution at law, and out of the avails of such sale he shall pay, first, the costs of this action; second, whatever taxes stand assessed against said premises; third, to the Colonial National Bank the amount still due it upon its mortgage debt; fourth, to the defendant, Alice M. York, the sum of $500 in lieu of her homestead exemption; fifth, to the plaintiff herein the difference between the amount paid the Colonial National Bank and the entire mortgage debt, if no payment had been made upon it, less $500, and not in excess of the plaintiff's claim; sixth, to the Wick Banking & Trust Company the remainder of the avails of such sale not exceeding the amount of its judgment; eighth, whatever balance the American Surety Company whatever balance may remain, not exceeding the amount of its judgment; eighth, whatever balance shall then be left to the defendants, Alice S. M. York, Milton York and Blanche York.

The defendants, the Wick Banking & Trust Company, the American Surety Company, Alice M. York, Alice S. M. York, Milton York and Blanche York, each severally except to this decree.

------------

## GAS AND OIL—LEASES.

[Wood (6th) Circuit Court, June 26, 1903.]

Haynes, Hull and Mooney, JJ.

(Judge Mooney of the Third Circuit sitting in place of Judge Parker.)